WALTER M. MEYN *v.* DULANEY-MILLER AUTO COMPANY
*et al.*

(No. 8465)

Submitted February 9, 1937. Decided April 3, 1937.

546

*Erskine, Palmer & Curl,* for plaintiffs in error.

*Handlan, Garden & Matthews* and *Lester C. Hess,* for defendant in error.

RILEY, JUDGE:

This is an action at law of trespass on the case instituted by Walter M. Meyn against the Dulaney-Miller Auto Company, a corporation, and Bart Scanlon, to recover damages for personal injury growing out of an automobile accident. To a judgment based on a verdict in the amount of $28,000.00, rendered in favor of the plaintiff and against both defendants, the defendants obtained this writ of error.

About 11:55 P. M., July 13, 1934, the plaintiff was struck and injured by an automobile driven by the defendant, Scanlon, and owned by the defendant, Dulaney-Miller Auto Company. The accident occurred on Market Street, one of the main streets in the City of Wheeling, between Twelfth and Eleventh Streets. At the time of the accident, the plaintiff, according to his own story, was proceeding across Market Street from the easterly to the westerly pavement in a diagonal direction at an angle of about thirty degrees north of west. At this place, there was no crosswalk. The traffic ordinances then in force in the City of Wheeling provided:

"(a) Pedestrians shall cross streets at crosswalks or at end of block; and where there is no traffic officer, traffic light or other traffic controlling device, and where full view of the crosswalk is not obscured from the view of the on-coming vehicular traffic, the pedestrian shall have the right of way; provided, however, that this right is restricted to mean that the pedestrian shall exercise all due precaution in crossing and be heedful of the difference in distance covered by a mechanical-driven vehicle and a pedestrian in the same period of time.

"(b) Every pedestrian crossing a roadway at any point other than within a marked or unmarked crosswalk shall yield the right-of-way to vehicles upon the roadway, provided that this provision shall not relieve the driver

of a vehicle from the duty to exercise due care for the safety of pedestrians."

The Dulaney Company was engaged in the business of selling automobiles, new and used. Scanlon was in charge of, and also a salesman in, the company's used car department. He was paid a salary of $100.00 per month to operate the department with commissions of two per cent on sales made by him personally, and one per cent on sales made by salesmen under him. He could sell used cars, including the car in which he was driving at the time of the accident, at all times of the day or night, although his regular hours of employment were between 8:00 A. M. and 9:00 P. M. The used car department, according to custom, closed at 9:00 P. M. This department was located at the defendant company's regular place of business at Twenty-third and Market Streets, a number of blocks directly south of the place of the accident. Scanlon had the right to use the car in question in going to, and returning from, his work. He also had the right to use it and other used cars for his company's business and his own pleasure. However, he was expected to purchase his own gasoline when he used such cars for pleasure. At the time of the accident, Scanlon lived in the "Out the Pike" section of Wheeling, a residential section some distance from the defendant company's location, the place of accident being on the route between the company's place of business and Scanlon's home.

On the night in question, Scanlon used the car to attend a Shriners' picnic at Wheeling Park. From Wheeling Park, he took two young women, whom he met there, to their homes in Martin's Ferry, and then returned to the Washington Restaurant in Wheeling, which restaurant is situated on Market Street a short distance south of the place of accident. He left the restaurant about 11:30 P. M., and drove south on Market Street in a direction opposite from his home to the street in front of the Delaney Company's place of business for the purpose of assuring himself that the used cars belonging to the company had been removed from the street to

their proper place of storage for the night. While there, he did not leave the car, but satisfied himself by a view from the driver's seat. After he had assured himself, he drove north on Market Street toward his home, and incidentally, to the place of accident.

From its intersection with Twelfth Street to a point some distance north of the place of the accident, Market Street has an even width of approximately thirty-seven and one-half feet. It has sidewalks on each side, having a width of about thirteen and one-half feet. Approximately in the center of Market Street at the place where the accident occurred, there was a street car track. The eastern rail of this track was about sixteen and one-half feet west of the eastern curb of Market Street. On the west, the track was double rail. The distance, as shown by the map in evidence, from the northerly intersection line of Twelfth and Market Streets to the place where the plaintiff's body was found immediately after the accident is approximately 140 feet, and to the place where the plaintiff testified he was struck by the defendant's car, 120 feet. Although Market Street is a busy street of the City of Wheeling, it appears from the record that at the time of the accident, the traffic was light.

The plaintiff testified that when struck, he was proceeding across Market Street from the easterly to the westerly pavement in a diagonal direction at an angle of about thirty degrees; that he was proceeding in a northwesterly direction, and therefore had his back slightly to northbound traffic; that he looked south as he stepped off the curb to see about the traffic light at Twelfth and Market Streets, and found it red for north and south traffic; that he walked slowly due to an operation which he had had some months before; that from the time he first stepped from the curb until he reached a point between the center of the car track, he kept his head turned southward watching the traffic; that in the center of the car track, he again glanced at the traffic light and found it still red; then he glanced to the north, and instantly was hit, knocked down, became unconscious and recalled nothing further about the accident.

He further testifies that he did not see the defendant's automobile approaching nor did he know what had hit him. The evidence showed that he had defective vision, which was corrected in one eye only. Plaintiff further testified that there was one automobile parked along the eastern curb of Market Street in front of the Postal Telegraph Company's office, a short distance to the north of him; but from the place where he first stepped off the curb to the intersection of Twelfth and Market Streets, there were no automobiles parked along said eastern curb. He is supported in this statement by the testimony of several witnesses, although he is contradicted by the testimony of the defendant and a number of other witnesses.

On the other hand, Scanlon's account of the accident differs widely from that given by the plaintiff. Scanlon says that after leaving the Dulaney Company's place, he proceeded northward along Market Street toward Twelfth Street; that at Twelfth Street, he was stopped by the traffic light being red; that he waited there until the light turned green, when he placed his car in low gear and proceeded in low gear for a distance of about fifteen feet north of the intersection line of Twelfth and Market Streets; that he then shifted to, and continued in, second gear until he struck the plaintiff; and that when he struck the plaintiff, he was going at a speed of about fifteen miles an hour and the western wheels of his car were about three feet east of the eastern rail of the street car company's tracks. He further testified that the plaintiff suddenly stepped from behind a car parked along the eastern curb of Market Street into his car, and was struck by its right fender; that he did not see the plaintiff until he was within fifteen feet of him; that upon seeing the plaintiff, he turned his car to the left in an effort to avert the accident; that at the time he saw the plaintiff, he saw the light of a car passing him in a southerly direction; that when he struck the plaintiff, he saw a dark, heavy object fall over the front fender of his car on the right; that he did not identify this object as being the body of the plaintiff. He further testified

that when he saw the plaintiff, he turned his car to the left in order to avert the accident; that he did not see the plaintiff after he first saw him; and that "it might have been better if I had tried to stop, I might have cleared him then, I don't know."

The defendants claim that from the time the plaintiff stepped from the front of the parked car, Scanlon did not have time to stop or to avert the accident; that the plaintiff was dressed in a dark suit; that the lighting conditions were poor; and that it would be impossible, under the circumstances, to see a person dressed like the plaintiff at a distance of more than thirty-five feet. Plaintiff, however, produced evidence to the effect that lighting conditions were good; that a person could be seen crossing the street for a distance of one block, and upon cross-examination, Scanlon was caused to testify that he could see a person crossing the street for a distance of 150 to 200 feet. Scanlon also testified that with deflected beam, he could see 75 feet, and with bright lights he could see 150 feet.

The defendants further contend that the defendant, Scanlon, was driving at the rate of fifteen miles an hour. However, Scanlon's testimony as to speed is contradicted by the testimony of one Ford, a defense witness, who testified that he was standing at the northeastern corner of Twelfth and Market Streets when Scanlon's car passed north, and that the same was being driven at the rate of twenty-five to thirty miles per hour. The statement made to police officers by Scanlon that he was going from fifteen to twenty miles an hour was confined by the instruction of the court only to Scanlon's liability.

The position is also taken that there was no negligence on the part of Scanlon. Defendants say that there is not sufficient evidence for the jury to consider on the issue of whether Scanlon failed to keep a proper lookout and whether he was going at an improper rate of speed. On both these questions, we have the conflict of testimony, as has been narrated just above. However, there are certain physical facts which should also be considered and which it was proper for the jury to consider. When the

accident occurred, there were street lights along Market Street at intervals, every other light being lit, though their candlepower had been reduced by the city. The traffic at that time was comparatively light; the view up the center of Market Street, at least along that part of Market Street on which Scanlon said he was driving, was unobstructed. Immediately after being struck, Meyn's body was found about twenty-four feet north of the place where he testified he was struck; and Scanlon's car was from three to twenty feet to the north of the body. In addition, the right headlight and the cross-bar in the front of Scanlon's car were broken. Also, the accident caused a dent to be made on the right side of the hood. Several witnesses testified that a loud noise was created by the collision.

Undoubtedly, it was within the province of the jury to have accepted Scanlon's version of the accident. Had they done so, their verdict would have been for the defendants. Such a verdict would have been warranted by the evidence. That, however, is not the situation which confronts this court. Here, we have a conflict of the evidence and a verdict in favor of the plaintiff. In determining whether this verdict should be sustained or set aside, it is necessary for us to consider whether or not there is sufficient evidence of probative force upon which, if taken as true, a jury composed of twelve reasonable men would be justified in sustaining the plaintiff's theory of the case.

The question of the Dulaney Company's liability is raised by the defendants. Counsel cite as error the action of the trial court (1) in submitting to the jury the question as to whether or not Scanlon was acting within the scope of his authority or employment; and (2) in instructing the jury that Scanlon was not an independent contractor. Immediately after plaintiff rested, J. M. Miller, vice-president and manager of the Dulaney Company, and Scanlon testified for the defendants. These witnesses at this time were examined and cross-examined only as to Scanlon's relation to the company. Before any

other testimony was introduced, the company rested its case.

The stipulation as to the company's ownership of the automobile created a rebuttable presumption that he was acting within the scope of his employment. *Ercole* v. *Daniel,* 105 W. Va. 118, 141 S. E. 631; *Jones* v. *Cook,* 90 W. Va. 710, 111 S. E. 828; *Shahan* v. *Jones,* 115 W. Va. 749, 177 S. E. 774; 5 Am. Juris., 711, 844, secs. 373, 615; 74 A. L. R. 944. We need not restate in detail the circumstances bearing upon Scanlon's relation to the company's business. The jury, having decided that, at the time of the accident, Scanlon was acting within the scope of his employment, we are now concerned with the law of the case. Ordinarily, the owner of an automobile is not liable for injuries caused by a servant, while operating the car on his own business or pleasure, though the servant had the owner's consent. 5 Am. Juris., 711, 713, secs. 373, 375; *Reilly* v. *Connable,* 214 N. Y. 586, 108 N. E. 835, L. R. A. 1916A, 954, Ann. Cas. 1916A, 656; *Gardner* v. *Farnum,* 230 Mass. 193, 119 N. E. 666, L. R. A. 1918E, 997; *Weber* v. *Allen Co.,* 64 Cal. App. 274, 221 P. 663; *Lund* v. *Olson,* 183 Minn. 515, 237 N. W. 188. (See also cases cited, 22 A. L. R. 1397; 45 A. L. R. 478; 68 A. L. R. 1052; 80 A. L. R. 726.) This was Scanlon's exact situation when he went to the Shriners' picnic at Wheeling Park, and then took the young women home. The fact that he had a right to sell the automobile at the picnic and while there, was incidentally advertising the company's business, did not bring him within the scope of his employment. He was on a "frolic of his own". *Kitz* v. *Scudder Syrup Co.,* 199 Ill. App. 605; *Reynolds* v. *Buck,* 127 Iowa 601, 103 N. W. 946; *Lotz* v. *Hanlon,* 217 Pa. 339, 66 A. 525, 10 L. R. A. (N. S.) 202, 118 Am. St. Rep. 922, 10 Ann. Cas. 731; *Marsal* v. *Hickey,* 225 Mass. 170, 114 N. E. 301; 5 Am. Juris., 718, sec. 380. But the situation changed when he left the Washington Restaurant and proceeded in a direction away from his home to his company's place of business. While not directed specifically to inspect the used car department after it closed at nine o'clock in the evening, the record does not sug-

gest that he was prohibited from doing so. As the head of the used car department, he was responsible for its well-being. Nothing in the record suggests his responsibility ceased or was curtailed after the customary closing time. When he left the restaurant and started toward the company's place of business, he left his own pleasure and was proceeding upon his master's business. Clearly, while at the place of business and inspecting it, he was acting within the scope of his employment. If the accident had occurred while he was making the inspection, without doubt the company would have been liable. But what is the company's liability when, having left the place of business, he started toward his home and had passed the Washington Restaurant on his way home? He had the right to use the car from the place of business to his home and back. Generally, where a servant has permission to use a car in order to better execute his business to go to and from his meals and home, he is acting within the scope of his employment. 5 Am. Juris., 718, sec. 379; 45 A. L. R. 490; 68 A. L. R. 1058; 80 A. L. R. 732; *Goff* v. *Clarksburg Dairy Co.*, 86 W. Va. 237, 103 S. E. 58; *Fisick* v. *Lorber*, 95 Misc. 574, 159 N. Y. Supp. 722; *Depue* v. *Salmon Co.*, 92 N. J. L. 550, 106 A. 379; *Brennan* v. *White Motor Co. et al.*, 210 App. Division 533, 206 N. Y. Supp. 544; *Kish* v. *California State Automobile Ass'n.*, 190 Cal. 246, 212 P. 27. Whether the driver of an automobile using his employer's car to go to and from work is acting within the scope of his employment, is a question of fact for the jury. *Goff* v. *Clarksburg Dairy Co., supra; Zondler* v. *Foster Mfg. & Sup. Co.*, 277 Pa. 98, 120 A. 705; *Puccia* v. *Sevigne*, 258 Mass. 234, 154 N. E. 765; *Moore* v. *Roddie*, 103 Wash. 386, 174 P. 648, modified, 106 Wash. 548, 180 P. 879; *Wrightsman* v. *Glidewell*, 210 Mo. App. 367, 239 S. W. 574; *Ferris* v. *McArdle*, 92 N. J. L. 580, 106 A. 460; *Brennan* v. *White Motor Co. et al, supra; Butler* v. *Hyperion Theater Co.*, 100 Conn. 551, 124 A. 220; *Dunbaden* v. *Castle Ice Cream Co.*, 103 N. J. L. 427, 135 A. 886. Likewise, it is generally a jury question where an employee driving his employer's automobile diverts from his master's business and is in-

volved in an accident upon returning towards the master's business. *Reynolds* v. *Denholm,* 213 Mass. 576, 100 N. E. 1006; *Rooks* v. *Swift & Co.,* 210 Ala. 364, 98 So. 16; *Good* v. *Berrie,* 123 Me. 266, 122 A. 630; *Bloodgood* v. *Whitney,* 235 N. Y. 110, 139 N. E. 209; *Gibson* v. *Dupree,* 26 Colo. App. 324, 144 P. 1133; *Riley* v. *Standard Oil Co.,* 231 N. Y. 301, 132 N. E. 97, 22 A. L. R. 1382; *Cummings* v. *Republic Truck Co.,* 241 Mass. 292, 135 N. E. 134; *Samuels* v. *Hiawatha Holstein Dairy Co.,* 115 Wash. 343, 344, 197 P. 24; *Dale* v. *Armstrong,* 107 Kan. 101, 190 P. 598; *Edwards* v. *Earnest,* 206 Ala. 1, 89 So. 729, 22 A. L. R. 1387. Under these authorities and sound logic, we think that if at the time of the accident Scanlon was going from his work immediately after regular working hours to his home, the jury would have been entitled to determine that he was working within the scope of his employment. But, on the night of the accident, while at the company's place of business inspecting it, clearly, he was within the scope of his employment and the fact the accident occurred outside regular working hours factually did not alter the situation. We think that under all the circumstances, it was the clear province of the jury to determine whether or not at the time of the accident, Scanlon was acting within the scope of his employment.

Did the trial court err in refusing to submit to the jury the question whether or not Scanlon, at the time of the accident, was an independent contractor? We think not. For the defendant, it is suggested that the fact that Scanlon was also manager of the used car department did not make him a servant of the company so far as his duties as a salesman were concerned. When, however, he went to inspect the used car department, he was acting in his capacity as the head of that department and as such, was the company's employee and not an independent contractor. One of the tests of distinction between an independent contractor and an agent or employee is "whether the employer retained the right, or had the right under the contract, to control the mode or manner in which the work was to be done." 5 Am. Juris., 727, sec.

392; *Dishman* v. *Whitney*, 121 Wash. 157, 209 P. 12, 29 A. L. R. 460; *Rogers* v. *Boyers*, 114 W. Va. 107, 170 S. E. 905.

> "The test of the relation between one having work done and the workman consists in the employer's right or lack of right to supervise the work. If that right exists, the relation is that of master and servant. If that right does not exist, the relation is that of employer and independent contractor." *Rogers* v. *Boyers, supra.*
>
> "An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other *nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking.*" (Italics supplied.) Restatement, 1 Agency, sec. 2 (3).

Thus the test is not the exercise of control, but *the right to control.* While the record contains some elements of Scanlon's freedom, nothing therein suggests that the company did not have the right to control or supervise Scanlon's work. We think it was not the province of the jury in the instant case to pass on the question whether or not Scanlon was an independent contractor. The trial court held, as a matter of law, that he was not. In so holding, there was no error.

Defendants contend, that the plaintiff, according to his own story, was walking between intersections across Market Street in a diagonal direction in violation of the city ordinance, and, therefore, was guilty of negligence which contributed proximately to his injury. Of course, if this is true, the plaintiff, except for the intervention of the last clear chance doctrine, is precluded from recovery. We cannot, however, say as a matter of law that the violation of the ordinance proximately was negligence which contributed to the accident. Plaintiff's story must be taken as true, because it is most favorable to him, and was considered by the jury in reaching its verdict. *Wiseman* v. *Ryan,* 116 W. Va. 525, 182 S. E. 670. Therefore, we assume that the plaintiff, as he testified,

looked constantly for traffic as he proceeded across the street.

It is not negligence *per se,* in the absence of an ordinance, for a pedestrian to cross a street between intersections. Generally, a motorist must keep a lookout for pedestrians, not only at street crossings, but between intersections. Huddy, Automobiles, section 435, and note; 2 Ruling Case Law, 1186; 14 A. L. R., p. 1183; 67 A. L. R., p. 320, and cases cited. This court has held (*Walker* v. *Bedwinek,* 114 W. Va. 100, 170 S. E. 908; *Ritter* v. *Hicks,* 102 W. Va. 541, 135 S. E. 601, 50 A. L. R. 1505) that a pedestrian struck by an automobile between crossings, after looking in both directions without observing the approach of an automobile, is not guilty of contributory negligence as a matter of law for failing to look after entering the street. Plaintiff's violation of the ordinance, in attempting to cross the street between intersections, is negligence; but to preclude recovery, it must naturally and proximately result in his injury. *Oldfield* v. *Woodall,* 113 W. Va. 35, 166 S. E. 691.

There is a great diversity of American decisions on the question as to whether the violation of the ordinance constitutes negligence *per se* which will preclude recovery, or is simply evidence of negligence. 12 Va. Law Review, 503. Almost uniformly, however, the courts have held that to preclude recovery, the plaintiff's violation of the ordinance must be the proximate cause or contribute proximately to the injury. This question, under the great weight of American authority, is a question of fact for the jury. *McKeon* v. *Delbridge,* 55 S. D. 579, 226 N. W. 947, 67 A. L. R., p. 311, note 333; *Ivy* v. *Marx,* 205 Ala. 60, 87 So. 813, 14 A. L. R. 1173 (note p. 1197, and cases cited) ; *Ensley Mercantile Co.* v. *Otwell,* 142 Ala. 575, 98 So. 839, 4 Ann. Cas. 512, and note; *Day* v. *Duluth St. R. Co.,* 121 Minn. 445, 141 N. W. 795; *Lerette* v. *Director General of Railroads,* 306 Ill. 348, 137 N. E. 811; *Freeborn* v. *Holt,* 100 Okla. 50, 227 P. 136; *St. Louis, etc., R. Co.* v. *Price,* (Tex. Com. App.) 269 S. W. 422, Id. (Tex. Civ. App.) 244 S. W. 642.

Under the ordinance in question, the plaintiff and

Scanlon both had the duty to use due care. Paragraph (b) of the ordinance provides that a pedestrian crossing at a point other than a crosswalk shall yield the right-of-way to vehicles; and that such ordinace expressly does not relieve the driver of the vehicle from the duty to exercise due care for the safety of the pedestrian crossing between intersections. The legislative intent underlying this ordinance was to place a higher degree of care on the pedestrian crossing streets at places other than crosswalks than at the regular crosswalk, without relieving the motorist of his duty to use due care. Such an ordinance should be construed reasonably, and should require pedestrians to yield their right to the street only when necessity requires it to prevent stopping a vehicle. *Green* v. *Ruffin*, 141 Va. 628, 125 S. E. 742, 127 S. E. 486.

In *Knutson* v. *McMahan et ux.*, 186 Wash. 518, 58 P. (2d) 1033, the Supreme Court of Washington had under consideration an ordinance similar to the one in the instant case. There, the plaintiff's decedent was hit while crossing a street between intersections in violation of an ordinance which provided:

> "Pedestrians shall not cross any street in the city except at crosswalks, and that vehicles shall have the right-of-way between intersections and pedestrians at crosswalks."

The court held that the decedent was guilty of contributory negligence as a matter of law, but that it did not defeat recovery. Syllabus 3 reads: "Pedestrian's negligence as matter of law, in attempting to cross street between intersections in violation of ordinance, does not defeat recovery for injuries inflicted by automobile, unless such negligence materially contributed to accident."

Because the ordinance in the instant case did not relieve Scanlon from his duty to use due care toward pedestrians crossing the street between intersections, the case of *Ritter* v. *Hicks, supra,* is a strikingly similar case. There, this court affirmed a judgment in favor of a pedestrian against the driver of an automobile. The

plaintiff was proceeding between cross streets from one side of the street to the other. At the place of accident, the street measured 33.7 feet. In the instant case, the street measured slightly over 32 feet. The court held that the plaintiff was not guilty of contributory negligence. If the plaintiff's story is true, and we must view it in the light of the verdict of the jury, it seems to us that it was reasonable for the jury to say that the plaintiff, having looked constantly as he was crossing the street, was not guilty of negligence which contributed proximately toward the accident. Because, however, the plaintiff technically violated the ordinance, the trial court properly submitted the question of contributory negligence to the jury. To do so is in line with the great weight of American authority. *Maneff* v. *Lamer,* 152 Ore. 619, 54 P. (2d) 287; *Nelson* v. *Malcolm,* 11 Cal. App. (2d) 352, 53 P. (2d) 1014; *Newcomb* v. *Boston Protective Department,* 146 Mass. 596, 16 N. E. 555, 4 Am. St. Rep. 354; *Ensley Mercantile Co.* v. *Otwell, supra; Wall* v. *King,* 280 Mass. 557, 182 N. E. 855; *Hall* v. *Hepp,* 210 App. Div. 149, 205 N. Y. Supp. 474; *Kelly* v. *Huber Baking Co.,* 145 Md. 321, 125 A. 782; *Jackson* v. *Geiger,* 100 N. J. L. 330, 126 A. 438; *Ivy* v. *Marx, supra.*

We have examined the instructions dealing with contributory negligence, and find no prejudicial error. However, defendants' counsel say that the court erroneously instructed the jury to determine if the defendants were negligent before determining whether the plaintiff was negligent—when plaintiff's own evidence showed negligence on his part. They refer us to a part of the court's charge, and cite *Culp* v. *Virginian Railway Co.,* 77 W. Va. 125, 87 S. E. 187; *Barrickman* v. *Marion Oil Company,* 45 W. Va. 634, 32 S. E. 327, 44 L. R. A. 92. These cases, although correct in principle, do not apply to the instant case. It is true that an instruction on contributory negligence should not assume that defendant was primarily negligent. However, the trial court, in his charge, told the jury, in effect, that the burden of proving negligence rested upon the plaintiff, and that until the plaintiff established defendants' negligence, they should not

consider the question of contributory negligence. From a careful reading of this charge, we find there is no assumption in it of negligence on the part of the defendants. On the contrary, the jury were fully instructed as to the negligence of the plaintiff and then they were instructed that if they found the defendants negligent, they were at liberty to consider contributory negligence.

Defendants' counsel strenuously maintain that this case does not admit of the application of the doctrine of last clear chance. They say the plaintiff stepped suddenly from behind the front of a parked car into Scanlon's car; that plaintiff's dark clothing, coupled with poor lighting conditions and visibility, made it difficult for Scanlon to see the plaintiff; that Scanlon did not see the plaintiff until he was fifteen feet away, and then he had no time to avert the accident. If these were the only facts in the case, there would be grave doubt as to the right of the jury to consider the application of the doctrine. However, the jury had a right to disregard this testimony, and accept the testimony supporting the plaintiff's theory of the case. *Key* v. *Charleston & W. C. Ry. Co.*, 144 S. C. 164, 142 S. E. 336. And the plaintiff's account clearly admits the application of the last clear chance doctrine. When the plaintiff crossed the street, the street was dry and the night clear. According to some witnesses, people could be seen walking the street for a distance of one block. Scanlon himself testified that when he first saw the plaintiff, he was walking with his head down.

It is unnecessary at this point to state in further detail Scanlon's or plaintiff's stories. The jury had a right to infer from the evidence not only that Scanlon, by the exercise of due care, could have seen the plaintiff, but as a matter of fact, he actually did see the plaintiff walking diagonally across the street in the middle of the block with his back partly toward traffic, which, of itself, was a perilous position. And having seen the plaintiff in this position, he was, under the weight of authority, in duty bound to realize plaintiff's peril, and to take steps to avert the accident.

Here, the jury had a right to say, taking the plaintiff's

story as true, that the defendant actually saw the plaintiff's position, and therefore was under a duty to realize his peril. The jury had a right to say this, although Scanlon testified that he did not see the plaintiff until he was fifteen feet away. *Key* v. *Charleston & W. C. Ry. Co.*, *supra*. This being so, under the great weight of authority, the last clear chance doctrine should apply, provided there was sufficient interval of time after Scanlon saw the plaintiff's position for him to avert the accident. *Chunn* v. *City & Suburban Ry. of Washington*, 207 U. S. 302, 52 L. Ed. 219, 28 S. Ct. 63; *Godfrey* v. *Vinson*, 215 Ala. 166, 110 So. 13; *Missouri P. R. Co.* v. *Skipper*, (1927) 174 Ark. 1083, 298 S. W. 849; *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514, 74 P. 15, 63 L. R. A. 238, 98 Am. St. Rep. 85; *United Rys. & Electric Co.* v. *Sherwood Bros.*, 161 Md. 304, 157 A. 280; *Morrison* v. *Rhode Island Co.*, 41 R. I. 474, 104 A. 71; *Leftridge* v. *Seattle*, 130 Wash. 541, 228 P. 302; Restatement of the Law of Torts, Vol. 2, section 480. Therefore, it is immaterial, in the instant case, whether or not plaintiff's claimed negligence had terminated before the accident or had concurred with Scanlon's negligence. *Wilson's Admx.* v. *Virginian P. R. Co.*, 122 Va. 160, 94 S. E. 347; *Leftridge* v. *Seattle, supra; Morrison* v. *Rhode Island Co., supra; Smith* v. *Gould,* 110 W. Va. 579, 159 S. E. 53, 92 A. L. R. p. 28.

In *Smith* v. *Gould, supra,* syllabus one reads:

"The last clear chance doctrine is properly extended to a case where an automobilist, by reason of failure by him in his plain duty to maintain a lookout for the persons and property of others on the highway, commensurate with the danger indicated by attendant facts and surrounding circumstances known to him, and which are such as to have put him on the alert, causes injury to another (though such other was himself concurrently negligent), where the peril should have been seen and comprehended by the automobilist and the injury avoided in the exercise of reasonable care commensurate with the situation. Such case constitutes an exception to the general rule which

precludes recovery by a plaintiff whose negligence has concurred with the defendant's."

The last sentence of that point of the syllabus should be taken to mean that a negligent plaintiff, oblivious of impending danger, or unable to extricate himself, may nevertheless recover for injuries, where the defendant knew of the plaintiff's situation, and, under the circumstances, in the exercise of reasonable care, should have realized the plaintiff's peril, and, on such realization, could have avoided the injury.

The submission to the jury of the last clear chance doctrine by plaintiff's instructions Nos. 5, 8 and 15 is also assigned as error. Under these instructions, the jury was permitted to find for the plaintiff, though himself negligent and in a position of peril, if in the exercise of reasonable care the defendant could have seen the plaintiff in said position in sufficient time to avert injuring him and failed to do so. Where a plaintiff cannot escape from his position of peril, it is immaterial whether the defendant had actual knowledge of plaintiff's position and was under a duty to realize the peril, or by the exercise of reasonable care could have seen and realized plaintiff's peril. 2 Restatement, Torts, sec. 479.

In the absence of actual knowledge by defendant of plaintiff's position of peril, a negligent plaintiff in a position of peril from which he can escape cannot recover under the last clear chance doctrine unless oblivious of his impending danger, and the defendant knew of the plaintiff's situation, and, under the circumstances, in the exercise of reasonable care, should have realized the plaintiff's peril, and, on such realization, could have avoided the injury. *McLeod, Admr., etc.* v. *Charleston Laundry Company,* 106 W. Va. 361, 145 S. E. 756; *Emery* v. *Monongahela West Penn Public Service Company,* 111 W. Va. 699, 163 S. E. 620; *Smith* v. *Gould, supra;* 2 Restatement, Torts, sec. 480. But are these instructions cured by defendants' instructions Nos. 13 and 26? The defendants' instruction No. 13 instructs the jury that "the plaintiff cannot recover unless the defendant, Bart Scanlon, is shown to have had actual knowledge, or

*should have had by the exercise of reasonable care actual knowledge of,* the plaintiff's position of peril, and also that the defendant, Bart Scanlon, was aware, or *by the exercise of reasonable care should have been aware,* of the plaintiff's unconsciousness of or inability to avert the peril." If plaintiff's instructions 5, 8 and 15 were simply incomplete instructions, they could be cured by other instructions. *Adams* v. *Virginian Gasoline & Oil Company,* 109 W. Va. 631, 156 S. E. 63. However, they are binding on the application of the last clear chance doctrine. They permit recovery by a negligent plaintiff in a position of peril, though plaintiff's danger was not actually discovered by the defendant but ought to have been and plaintiff was aware of his peril and able to escape therefrom. Such a theory of the last clear chance doctrine is not consonant with the holdings of this court. *McLeod, Admr., etc.* v. *Charleston Laundry Company, supra; Emery* v. *Monongahela West Penn Public Service Company, supra; Smith* v. *Gould, supra.* These instructions being complete and erroneous, they are not cured by the other instructions. *State* v. *Ringer,* 84 W. Va. 546, 100 S. E. 413; *Liston* v. *Miller,* 113 W. Va. 730, 169 S. E. 398.

The court's refusal to give defendants' instructions Nos. 20 and 21 on concurrent negligence is assigned as error. These instructions improperly exclude the application of the last clear chance doctrine and ignore the fact that concurrent negligence will not preclude recovery unless there is a proper causal connection between it and the plaintiff's injury.

Of course, the doctrine of last clear chance "implies a sufficient interval of time for both appreciation of the dangerous situation and effective effort to relieve it." *Milby* v. *Diggs,* 118 W. Va. 56, 189 S. E. 107; *Juergens* v. *Front,* 111 W. Va. 670, 163 S. E. 618. In the first mentioned case, the plaintiff stepped off the curb suddenly and directly in front of the defendant's automobile, which was going at a speed in violation of a city ordinance. If the jury, in the instant case, had accepted Scanlon's version of the accident to the effect that the

plaintiff stepped suddenly from behind a car, *Milby* v. *Diggs, supra,* would apply. However, here again, we must take plaintiff's version of the accident. *Wiseman* v. *Ryan, supra.* From curb to curb, at the point where plaintiff says he first stepped off the sidewalk, the street, as shown by the map in evidence, is slightly over 32 feet. On this map, the distance along the diagonal line from the curb to the place where the plaintiff says he was struck measures about 25 feet. Plaintiff says he walked slowly. Clearly, the jury had a right to say that Scanlon had time to avert the accident.

Defendants' counsel assign as error the trial court's action in overruling the demurrer to the declaration. They say the declaration states two inconsistent causes of action: (1) that Scanlon's negligence caused the injury and that plaintiff was using due care; and (2) that Scanlon saw plaintiff was in danger in time to avert the accident and did not do so. The declaration, we think, is sufficiently broad in its allegations to permit recovery on the ground of plaintiff's primary negligence, as well as on the ground that Scanlon failed to avert the accident after he saw the plaintiff's danger. It presents both of plaintiff's theories, but that does not render it demurrable. At common law duplicity was a mere formal defect constituting ground of special demurrer, and, as the special demurrer has been abolished by statute in this state, such defect now cannot be reached by demurrer. Code 56-4-37; *Collins, Administratrix, etc.* v. *Dravo Contracting Co.,* 114 W. Va. 229, 171 S. E. 757; *McMechen et al.* v. *Baltimore & Ohio Railroad Co.,* 90 W. Va. 21, 110 S. E. 474; *Huff* v. *The Lanes Bottom Bank,* 110 W. Va. 389, 158 S. E. 380; *Farmers' & Merchants' Bank* v. *Kingwood Nat'l. Bank,* 85 W. Va. 371, 101 S. E. 734.

Under assignment of error 8, defendants' counsel complain that medical experts were permitted to give their opinions in the presence of other medical experts in violation of a stipulation providing otherwise. Clearly, a misunderstanding occurred between counsel. This misunderstanding was unfortunate. We, however, find in it no prejudicial error in view of the fact that defend-

ants' counsel themselves placed medical witnesses on the stand, who, in turn, gave their opinion covering the whole scope of plaintiff's claimed injury. Whatever legal effect the stipulation may have had in the first instance was waived by defendants' counsel. In making this statement, we have in mind that the stipulation was made prior to the calling of Dr. Clovis, whose testimony dealt largely with the reading of X-ray pictures, and necessarily was concerned with matters of expert opinion; and while Dr. Clovis was testifying, Dr. Weiler, a defense witness, was also present in court and heard this testimony. Upon being called by defendants' counsel, he was examined in chief concerning his opinion of the nature and effect of plaintiff's injury.

Defendants' counsel rely upon thirty-two main and sub-assignments of error. We have considered all of them in the light of the record. Time will not permit us to discuss them in detail. With the exception of plaintiff's instructions Nos. 5, 8 and 15, we find no error in the record.

Because of the error in said instructions, the judgment is reversed, the verdict of the jury set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*