M. W. Bean *v.* Baltimore and Ohio Railroad Company

(No. 8820)

Submitted February 7, 1939. Decided March 7, 1939.

*McCauley & McCauley,* for plaintiff in error.

*Wayne T. Brooks* and *H. G. Muntzing,* for defendant in error.

KENNA, JUDGE:

This is an action of trespass on the case brought in the Circuit Court of Hardy County by Marlin W. Bean against the Baltimore & Ohio Railroad Company involving the recovery of property damage caused by a collision of the plaintiff's 1936 model International truck, loaded with live stock and driven by an employee, with one of the defendant's locomotives, operated on a branch line, while crossing Winchester Avenue in the Town of Moorefield during the early afternoon of January 19, 1938. There was a verdict and judgment for the plaintiff in the amount of five hundred forty-seven and one-half dollars. Defendant prosecutes this writ.

The uncontroverted testimony is that plaintiff's truck, being driven at a speed not estimated at less than fifteen to twenty miles an hour by an employee twenty-three years old named Hugh Tross, accompanied by a man named Glenn Guff, also in plaintiff's employ, ran into a locomotive of defendant when defendant's train, having picked up two cars at a siding near the Winchester Avenue crossing, was proceeding forward at a speed not estimated to exceed five miles an hour, and the engine had almost passed over the crossing. The truck had been driven over the mountain on the Wardensville Pike, which was covered with snow. The paving on Winchester Avenue was smoother and much more slippery. At the time of the collision the truck was approaching defendant's locomotive on what was apparently a straight street. The driver had been familiar with the crossing for a number of years. The view of the track from the avenue was somewhat obstructed by buildings thereon, the reverse of which was also true. The fireman called the engineer's attention to the oncoming automobile, and the engineer admitted that he saw it seventy-five or one hundred feet from the track. Guff, sitting on the driver's right, saw the oncoming locomotive approaching from his side of the truck before the driver did. He warned the driver when the truck was approximately one hundred feet from the railroad track. The truck's brakes were immediately applied and all four of its wheels "skidded" a distance of ninety feet from the track to the point where the truck struck the locomotive. The driver undertook to turn the truck into a side road before the impact, but due to its skidding wheels could not do so. The locomotive traveled after it was struck by the truck far enough for its tender to clear Winchester Avenue and the first box car to stop on that street. Winchester Avenue was covered with a slippery snow, the usual consequence of which and its effect upon motor traction the engineer of defendant's locomotive knew. The customary time for this regular combined passenger and freight train of the defendant's

to have left Moorefield was 2:10 P. M., and on this occasion, it was between five and ten minutes late.

The truck had a loading capacity of from two to three tons, and the force of the collision, which was entirely the force of the truck, resulted in practically demolishing it. Defendant had paid two thousand dollars for the truck and had owned it for fifteen months. He received a trade-in value of four hundred dollars. The truck had no chains on it, and the engineer could not see its wheels. Some livestock owned by plaintiff was killed and some injured. There are minor conflicts in the remaining testimony.

Several of the plaintiff's witnesses testified that they did not hear the locomotive bell nor its whistle. The engineer testified that he whistled for the crossing while between two hundred twenty-five and two hundred fifty feet away, and that both the whistle and the bell were being operated when the train reached the crossing. Excepting the estimate of distance, this statement was corroborated by the testimony of several people who lived in the vicinity of the crossing.

We believe that the five grounds of assigned error resolve themselves into but two questions of law which arise upon this record. First, the negligence of the plaintiff's servants being admitted, does this record justify the course taken by the trial court in instructing the jury and submitting the case on the theory that a verdict for the plaintiff could be justified under the doctrine of last clear chance? And second, should the trial court have permitted plaintiff to testify concerning a statement which he said Stanley H. Turley, a brakeman of the defendant, had made approximately two weeks after the accident to the effect that he, Turley, had seen the truck coming, saw all four wheels sliding, and that the engineer could have stopped the locomotive and avoided the accident, but did not try to do so?

Dealing with these two questions in reverse order, we are of the opinion that the admission of this witness' alleged statement was plainly erroneous, and that it is only necessary to distinguish the only case cited by de-

fendant in error, that of *Hains* v. *Railroad Co.,* '75 W. Va. 613, 84 S. E. 943, from the case at bar in order to answer the contended legal justification assigned by the defendant in error. In the *Hains* case, the plaintiff was seeking exemplary damages, and this Court held that the statements of the president of the railroad company showing his knowledge of the carelessness and incompetency of the conductor for whose negligence the company was being sued were admissible. In this case, no punitive damages are sought to be recovered nor would the question propounded to the witness Turley, who was a brakeman, have been justified as showing the defendant's knowledge if they were. See Jones on evidence (2d Ed.), section 951, p. 1753. Turley had not been on the witness stand, so that the propriety of the question cannot be justified on the ground of contradiction.

Did the plaintiff's showing justify an instruction which told the jury, in effect, that in spite of the negligence of plaintiff's servant if the jury believed the defendant's engineer knew the truck driver's condition of peril, or if that knowledge could properly be imputed to him in time for the exercise of ordinary care to have avoided the accident, the jury should return a verdict for the plaintiff? There was no objection to the form of plaintiff's two instructions (A-1 and D) in question. They were objected to on the theory that the doctrine of last clear chance did not arise under the proof. We do not think that the proof before the jury justified the giving of an instruction based upon the doctrine of last clear chance.

There is no showing to the effect that defendant's engineer at any time realized the truck driver's peril in time to have avoided the accident. To say that because of the doctrine of last clear chance the engineer of defendant's locomotive should have seen this truck approximately one hundred feet from the defendant's track, should have accurately estimated its speed and should also have correctly appraised the effect of the snow upon motor traction, while at the same time it is admitted that the truck driver was familiar with the location of this

crossing and had been going over it ever since he could remember, knew the train's scheduled time and was in a very much better position to know the condition of the highway than was the engineer, would be, in effect, to overrule a large number of West Virginia cases upholding the railroad company's right of way at crossings and the duty of the general public to look and listen, and, under certain conditions, even to stop, before passing over the track, even at a public crossing. As an example, see *Maynard* v. *C. & O. Railway Co.*, 111 W. Va. 372, 163 S. E. 171; *Robertson* v. *Railroad Co.*, 99 W. Va. 356, 128 S. E. 829.

The case of *Emery* v. *Monongahela, etc., Co.*, 111 W. Va. 699, 163 S. E. 620, cited by the defendant in error, involved the right of a *traction company* at a street crossing. So that even a similarity of facts involved does not justify the same legal conclusion under the doctrine of last clear chance. The holding of this Court in the fourth syllabus point of the case of *Meyn* v. *Dulaney-Miller Auto Co.*, 118 W. Va. 545, 191 S. E. 558, accords with the weight of authority and is clearly put. It reads as follows: "Syllabus one of *Smith* v. *Gould*, 110 W. Va. 579, 159 S. E. 53, 92 A. L. R. 28, amplified. The last sentence of that point of the syllabus should be taken to mean that a negligent plaintiff, oblivious of impending danger, may nevertheless recover for injuries, where the defendant knew of the plaintiff's situation, and, under the circumstances, in the exercise of reasonable care, should have realized the plaintiff's peril, and, on such realization, could have avoided the injury."

Furthermore, there are what appear to be irreconcilable conflicts in the testimony introduced by plaintiff. That concerning the time intervening after the servant of the plaintiff was in a position of peril until the collision, estimates the time from when the truck driver applied his brakes until he struck the engine, and the time that elapsed from when the truck driver was seen until the collision occurred, as having been between twenty and forty seconds. The minimum speed at which the truck

was traveling before the brakes were applied was estimated at fifteen miles an hour. The application of the brakes did not materially retard the truck's speed. At that speed, after he applied the brakes, instead of traveling approximately ninety feet in twenty seconds, he would have traveled four hundred and forty. Ninety feet in twenty seconds is four and one-half feet a second, which would be the average speed of the car after the brakes were applied. To reverse this calculation, if the truck driver applied his brakes when ninety feet from the track and if the truck was traveling at least fifteen miles an hour, instead of there having been twenty seconds of intervening time, there would have been actually less than one-fourth of that time or five seconds. Whether this would have been time to have avoided the injury is merely a matter of speculation; and since there is no proof establishing directly, or by inference, when the engineer was conscious of the truck driver's peril there is no basis upon which the doctrine of last clear chance can be held to have been applicable. We appreciate that those calculations are but estimates. Nevertheless, we think they exemplify a conflict in the plaintiff's proof.

The judgment of the Circuit Court of Hardy County is reversed, the verdict set aside, and a new trial awarded.

*Reversed; remanded.*