The RALEIGH COUNTY BANK, Administrator of the Estate of Kerley Keathley, Plaintiff,

v.

NORFOLK AND WESTERN RAILWAY COMPANY, a corporation, Defendant.

The RALEIGH COUNTY BANK, Administrator of the Estate of Delcia Davis Keathley, Plaintiff,

v.

NORFOLK AND WESTERN RAILWAY COMPANY, a corporation, Defendant.

Civ. A. Nos. 292, 293.

United States District Court
S. D. West Virginia,
Beckley Division.

Jan. 16, 1964.

Thornhill, Thornhill & Kennedy, Warren A. Thornhill, III, David T. Kennedy, Beckley, W. Va., for plaintiff.

McClintic, James, Wise & Robinson, E. Glenn Robinson, Charleston, W. Va., Mann & Mann, Fletcher W. Mann, Beckley, W. Va., for defendant.

FIELD, Chief Judge.

These two actions for wrongful death grew out of the same tragic occurrence and were consolidated for trial. In the case of Kerley Keathley, the jury returned a verdict in favor of the plaintiff for $17,250.00, allocating $11,000.00 thereof as pecuniary loss sustained by the decedent's daughters, Sandra and Patsy. In the case of Delcia Keathley, a verdict was returned for the plaintiff in the amount of $15,250.00, the jury allocating $9,000.00 thereof as pecuniary loss sustained by the daughters, Sandra and Patsy. Defendant has filed motions in each case for judgment n. o. v. and, in the alternative, for a new trial.

In the motions for judgment n. o. v. defendant assigns as grounds in support thereof that the evidence fails to establish negligence on its part, and that the primary negligence of Kerley Keathley was the proximate cause of the accident. Defendant further charges that plaintiffs' decedents were guilty of contributory negligence as a matter of law, and takes the position that the doctrine of last clear chance is not applicable in these cases. Defendant contends that the Court erred in charging the jury that plaintiffs might recover on that basis.

The evidence has not been transcribed, but for the purpose of passing on these motions, the facts are recalled to be as follows. The accident occurred shortly after one o'clock on the morning of November 18, 1961. The decedents, husband and wife, together with a friend, Cecil Smith, were riding in a car driven by Kerley Keathley. The car was being driven in an easterly direction along U. S. Route 52. As the highway approaches the village of Nolan, West Virginia, it runs parallel to the defendant's right of way on which are maintained three tracks running generally in an easterly-westerly direction. These tracks lie to the south of the highway which is somewhat higher in elevation. At Nolan a roadway leading off to the south forms a "T" intersection with Route 52. This roadway slopes down from Route 52 some 30 feet and then crosses the three tracks of the defendant. The crossing is protected by warning crossbucks as well as two automatic wigwag signals which flash a red light and ring a bell when activated.

At about ten o'clock on the night of November 17, 1961, the Keathleys and Smith left Bim, West Virginia, to drive to Kentucky. Kerley Keathley was driving and his wife was riding in the front seat, while Smith was in the rear seat. Smith and Kerley Keathley had drunk some beer prior to leaving Bim and also had a few cans of beer in the car. Mrs. Keathley had fallen asleep on the trip and was still asleep at the time of the accident.

It was the intention of Keathley to turn right at the intersection at Nolan, cross the defendant's tracks and proceed on across a toll bridge into Kentucky. When he reached the crossing the wigwag signals were operating, and Keathley turned right from Route 52 down the slight slope and brought his vehicle to a stop with the front wheels midway between the rails of the first or westbound track. A freight train was proceeding east on the third track at the time. Keathley kept the motor of his car running, and he and Smith were engaged in conversation.

Defendant's passenger train, consisting of two G. M. 1750 horsepower diesel locomotives and ten cars, was approaching from the east at 45 miles per hour. As it approached the crossing it was rounding a slight curve that bears from left to right in a westerly direction. There was evidence on behalf of the plaintiffs to the effect that the engineer failed to sound the horn. There is a conflict on this point as well as many others, but in passing on the motions for judgment n. o. v. I, of course, must accept the

evidence in the light most favorable to the plaintiffs. The train struck the car, killing both Mr. and Mrs. Keathley and seriously injuring Smith. After the accident the train which was some 900 feet in length was stopped with the last car on the crossing. The plaintiffs introduced evidence that the train could have been stopped within four to five hundred feet. Defendant's witnesses indicated the stopping distance was 850 to 1000 feet.

The engineer of the train, A. H. Blair, testified that he was about 25 "car lengths" from the crossing when he saw the Keathley car come down Route 52 and turn off down to the crossing and stop. A car length is recognized as about 40 feet which would make this initial sight distance some 1000 feet. At that time Blair assumed the car had stopped for the crossing. He continued to watch the crossing and testified that when he noticed the car was actually on the tracks he was only some six or seven car lengths away. At that time he "shot the train" into emergency, but it was too late to avoid the accident. Blair testified that while the crossing could be seen from some 25 car lengths' distance, it was impossible to ascertain the position of the car because of the curvature of the track and the elevation of Route 52 on the northerly side of the right of way.

The principal question presented by the motions for judgment n. o. v. is whether it was error to permit the jury to consider the doctrine of last clear chance in these cases. Plaintiffs' counsel contend that the law on this doctrine as applied from time to time by our Supreme Court of Appeals is unclear in West Virginia. Counsel for defendant take the position that the doctrine has been clearly developed by the West Virginia decisions, and as so developed is not applicable to these cases. To some degree, I can accept the contention of each party for, while I am of the opinion that the theory of the last clear chance doctrine has been explicated in a number of West Virginia cases over the past thirty years, in all deference I confess that I find it to have been loosely stated and applied at times.

As counsel for defendant pointed out, much of the surface confusion emanated from the first syllabus in Smith v. Gould (1931), 110 W.Va. 579, 159 S.E. 53, 92 A.L.R. 28, which reads as follows:

"The last clear chance doctrine is properly extended to a case where an automobilist, by reason of failure by him in his plain duty to maintain a lookout for the persons and property of others on the highway, commensurate with the danger indicated by attendant facts and surrounding circumstances known to him, and which are such as to have put him on the alert, causes injury to another (though such other was himself concurrently negligent), where the peril should have been seen and comprehended by the automobilist and the injury avoided in the exercise of reasonable care commensurate with the situation. Such case constitutes an exception to the general rule which precludes recovery by a plaintiff whose negligence has concurred with the defendant's."

The somewhat ambiguous language of this syllabus was clarified by Judge Riley's opinion in Meyn v. Dulaney-Miller Auto Co. (1937), 118 W.Va. 545, 191 S.E. 558, at page 566. In that case the opinion states:

"Here, the jury had a right to say, taking the plaintiff's story as true, that the defendant actually saw the plaintiff's position, and therefore was under a duty to realize his peril. * * * This being so, under the great weight of authority, the last clear chance doctrine should apply, provided there was sufficient interval of time after Scanlon saw the plaintiff's position for him to avert the accident. * * *"

In his citation of authorities for the quoted statements, Judge Riley included Section 480 of the Restatement of the

Law of Torts,[1] and then after quoting the first syllabus of Smith v. Gould, supra, makes this observation:

> "The last sentence of that point of the syllabus should be taken to mean that a negligent plaintiff, oblivious of impending danger, *or unable to extricate himself*, may nevertheless recover for injuries, where the defendant knew of the plaintiff's situation, and, under the circumstances, in the exercise of reasonable care, should have realized the plaintiff's peril, and, on such realization, could have avoided the injury."

(Emphasis added.)

It is interesting to note that the italicised language which appears in the body of the opinion was omitted from the fourth syllabus by the Court which was designed to amplify its statement of the law in the Gould case. The Court's position is further clarified by this statement in the opinion (191 S.E. at page 567):

> "In the absence of actual knowledge by defendant of plaintiff's position of peril, a negligent plaintiff in a position of peril from which he can escape cannot recover under the last clear chance doctrine unless oblivious of his impending danger, and the defendant knew of the plaintiff's situation, and, under the circumstances, in the exercise of reasonable care, should have realized the plaintiff's peril, and, on such realization, could have avoided the injury."

Subsequent decisions of our Supreme Court of Appeals have been consonant to the doctrine as amplified and enunciated in the Meyn case. Belcher v. Norfolk and Western Railway Company (1955), 140 W.Va. 848, 87 S.E.2d 616; Weddle v. Virginian Ry. Co. (1942), 125 W.Va. 41, 22 S.E.2d 698; Lynch v. Alderton (1942), 124 W.Va. 446, 20 S.E.2d 657; Bean v. Baltimore & O. R. Co. (1939), 121 W.Va. 105, 1 S.E.2d 881. Counsel for plaintiffs point to the cases of Rockingham Poultry M. Coop. v. Baltimore & Ohio R. Co. (1960), 145 W.Va. 787, 117 S.E.2d 504, and Fielder v. Service Cab Co. (1940), 122 W.Va. 522, 11 S.E.2d 115, as evidence of the Court's lack of fidelity to the doctrine as set forth in Meyn. However, an analysis of these cases indicates that in neither of them was the Court required to analyze or specifically apply the doctrine which we are considering in the context of the facts of the present case; and certainly those cases do not in anywise indicate a departure from the syllabus of the Meyn case as the law in West Virginia.

Much of the apparent confusion in the decided cases results not from a failure or refusal to recognize the appropriate principle in this area of last clear chance, but from the difficulty in making a determination of its applicability to a given state of facts. Counsel for defendant argue that it cannot apply in the present case or any case where the negligence of a plaintiff continued up to the point of the occurrence "and concurred with the conduct of the defendant as a contributory proximate cause." The case of New York Central Railroad Company v. Casto (4th Cir. 1954), 216 F.2d 604, cited by defendant is inapposite to the problem at hand, and if this contention of the defendant is valid, the doctrine of last clear chance could never apply to the negligently inattentive plaintiff who was oblivious of his peril.

---

1. Which reads:
"A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant
"(a) knew of the plaintiff's situation, and
"(b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and
"(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

On this point I agree with counsel for plaintiffs that Dean Muse's answer [2] to this contention is logical and sound:

> "'*If the plaintiff's negligence continues down to and efficiently contributes to the injury the last clear chance doctrine does not apply.*' The fallacy of this device is obvious. In all cases the effect of the plaintiff's negligence must continue down to the injury and efficiently contribute thereto in order to bar the plaintiff's recovery. If it does not do this the plaintiff's negligence is not a proximate cause. If not a proximate cause the plaintiff may recover in spite of his negligence. Therefore, the problem here is one of contributory negligence and not one of last clear chance. (p. 72) * * * Proximate cause and last clear chance are separate and distinct concepts. The point in a case where last clear chance becomes applicable is reached only after it has first been determined that the acts of both of the parties, plaintiff and defendant, are proximate causes of the injury." (p. 73) (Emphasis by author.)

Whether the result is viewed as an anomaly in the established principles of causation or an exception to the doctrine of contributory negligence, the courts generally have rejected this argument of "continuing and concurrent negligence" in cases where the doctrine of last clear chance has been applied to the negligently inattentive but oblivious plaintiff. In 44 Am.Jur. Railroads § 489, it is stated:

> "Although there may be some difficulty in reconciling the result with accepted principles of proximate cause, considering the practical justice in the result, the courts are in substantial agreement that the doctrine of last clear chance applies to render a railroad company liable where its trainmen discovered a person in a position which they realized, or reasonably should have realized, was dangerous to him and failed to exercise reasonable care to avoid injury to him, notwithstanding the plaintiff was physically able to escape the danger until the instant before he was struck, or at least down to a point of time, after which it was impossible for the trainmen to avert the accident, and was guilty of continuing and concurrent negligence in the sense of his continued obliviousness of his own danger."

The syllabus in the Gould case quoted herein recognized that the principle as stated was an exception to the rule which "precludes recovery by a plaintiff whose negligence has concurred with the defendant's." Judge Riley was even more emphatic in the Meyn opinion when he stated (118 W.Va. at page 566, 191 S.E. at page 566):

> " * * * Therefore it is immaterial, in the instant case, whether or not plaintiff's claimed negligence had terminated before the accident or had concurred with Scanlon's negligence."

A reading of Section 480 of the Restatement on torts indicates that the continuing or concurring negligence of the plaintiff is one of the elements of the problem for which a solution is sought.

Undoubtedly Kerley Keathley was negligent in driving upon the defendant's track, and he compounded this initial negligence by remaining on the track and literally waiting for the train to hit him. The night was clear and he was not totally unfamiliar with this particular crossing. The motor of his vehicle was running and nothing prevented him from getting off the track except his own negligent inattention. It is equally clear that he was tragically oblivious of his dangerous situation for the evidence shows that he and Smith sat and talked until just an instant before the impact.

The question then is did the defendant's employees know of Keathley's situation and realize or have reason to realize his position of oblivious peril in time to

---

2. Virginia's New Last Clear Chance Doctrine, 1 U. Richmond L. Notes, p. 67 (1951).

avoid the accident. Plaintiffs' counsel argue that they did. In their pre-trial brief, they took 1145 feet as the initial point of observation of the car by Blair and estimated that at the testified speed of 45 miles per hour the train was then 17 seconds in point of time from the crossing. They then granted 5 seconds or 365 feet to Blair to discover the oblivious peril of Keathley. They deducted an additional 99 feet or 1.5 seconds for reaction time to activate the braking system of the train. By this method they arrived at the conclusion that 681 feet remained within which the train could have been stopped which is within the range as stated by plaintiffs' expert witnesses.

This simple arithmetical computation does not, however, furnish the answer to our problem. First of all, while it is true Blair testified that he first saw the vehicle when he was some 25 car lengths from the crossing, the point of this first visual observation was not the point of Blair's knowledge of Keathley's situation within the context of the operative principles of the doctrine. Blair testified that at that point he assumed the vehicle was stopping for the crossing. This assumption on Blair's part was not unreasonable and the validity of such an assumption was recognized in both Weddle v. Virginian Ry. Co. and Belcher v. Norfolk and Western Railway Company, supra. In the latter case, the Court went so far as to state (87 S.E.2d at page 622):

" * * * If that be true, the engineer of the corporate defendant's train, on seeing the automobile on the crossing, could assume that the automobile would be moved from the place of peril, or the passengers therein would remove their persons to a place of safety. He was not required however to assume that the automobile and passengers therein would remain on the crossing while he traveled the distance from the point of sight to the place of accident."

Blair testified he first saw that the vehicle was on the tracks when he was six to seven car lengths away or some 280 feet from the crossing. At that distance it was obviously too late to take measures to avoid the accident. Counsel for plaintiffs suggest that Blair's testimony does not necessarily have to be accepted. However, in appraising his testimony, the surrounding circumstances should be considered. This accident did not happen in the daytime but in the darkness of night. The locomotive approached out of a curve that was unfavorable for headlight visibility of this particular crossing. Blair had seen the vehicle drive up and ostensibly stop for the crossing. Under these conditions it would have been exceedingly difficult to perceive the perilous position of the vehicle until it came within the direct beam of the locomotive lights, and at that point it was too late to avert the accident.

In this case it was incumbent upon the plaintiffs to prove by a preponderance of the evidence that defendant could have avoided the accident by the use of ordinary care after actual knowledge of the peril of plaintiff's decedents. Mere speculation will not suffice to carry that burden, and "while the matter of liability under the doctrine of last clear chance is ordinarily a question of fact for jury determination, yet, where the physical facts are such as to preclude a basis for the operation of said doctrine, the court should so declare and should not submit the question to the jury." Waller v. Norfolk & Western Railroad Co., 108 W.Va. 576, 152 S.E. 13.

In this case, even when the evidence is considered in the light most favorable to the plaintiffs, I am of the opinion that it fails to demonstrate that the defendant's agents saw the Keathley vehicle in a position of peril when there was still sufficient time for appreciation of the dangerous situation and effective action to avoid the tragic collision. Accordingly, it was error to submit the case to the jury on the doctrine of last clear chance. The language of Judge Fox in Weddle v. Virginian Ry. Co., supra, 22

S.E.2d at page 702, appears to be equally appropriate here:

> "The doctrine of last clear chance should be applied in a reasonable manner. It was never intended to create a new ground of recovery, except where it clearly appeared that a defendant, notwithstanding the negligence of a plaintiff, could, in fact, have prevented an injury. The foundation and seeming necessity for the rule is to prevent callous indifference from operating in favor of a defendant who may assume that he is protected against responsibility for his own negligence because, forsooth, a plaintiff is likewise negligent. That is not the case before us."

With the doctrine of last clear chance eliminated, it is apparent that the contributory negligence of Kerley Keathley bars a recovery in the action brought by his administrator, and accordingly the defendant's motion for judgment notwithstanding the verdict should be granted in that case.

 I do not reach the same conclusion in the case of Delcia Keathley. The contributory negligence of her husband cannot be imputed to her. The evidence of Smith was to the effect that she had been asleep as they approached the crossing, and continued to sleep until the moment of impact. There was no evidence to indicate that she was guilty of contributory negligence in falling asleep and it played no causal part in the accident. Newell v. Riggins, 197 Va. 490, 90 S.E.2d 150; Davis v. Sykes, 202 Va. 952, 121 S.E.2d 513. The verdict of the jury indicates that they found the defendant guilty of primary negligence and, lacking some negligent and proximate contribution on the part of Delcia

Keathley, the verdict in favor of her administrator must stand.

While the principal question was presented by the motions for judgment n. o. v., it is also necessary that I pass upon the defendant's motions for a new trial.[3] For the most part the grounds assigned in support of these motions deal with matters which in my opinion were properly submitted for jury determination. Additionally, defendant complains of the court's action in permitting the jury to consider the defendant's "whistle rule" as evidence of the measure of care devolving on its agents. As I recall, the jury was charged that this was merely one of the elements which they might consider on that issue, and I believe the charge in that respect comports with the weight of authority. See 44 Am.Jur. Railroads § 626. I am also of the opinion that damages for pecuniary loss in the case of Delcia Keathley were proper under the 1961 amendment of the West Virginia wrongful death statute.

 In passing upon the motions for a new trial, I, of course, must utilize a different standard from that applicable to a motion for a directed verdict or judgment n. o. v., and consider all of the evidence and other pertinent factors in reaching a determination whether the verdict was against the clear weight of the evidence or otherwise would result in a miscarriage of justice if permitted to stand. Williams v. Nichols (4th Cir. 1959), 266 F.2d 389; McCracken v. Richmond, F. & P. R. Co. (4th Cir. 1957), 240 F.2d 484. However, after considering all of the appropriate criteria, I am of the opinion that, aside from the question of last clear chance, there was no prejudicial error in the trial of these cases and, accordingly, the motions for new trial will be denied. Counsel may prepare final orders, incorporating this opinion by reference therein.

---

**3.** Rule 50(c) (1), Federal Rules of Civil Procedure.