CHESTER WHEELER *vs.* FRANK DARMOCHWAT.

PERLEY WHEELER *vs.* SAME.

CHESTER WHEELER *vs.* STANLEY WENTA.

PERLEY WHEELER *vs.* SAME.

Hampshire.    May 9, 1932. — October 27, 1932.

Present: RUGG, C.J., PIERCE, WAIT, FIELD, & DONAHUE, JJ.

*Negligence,* In use of way, Motor vehicle, Proximate cause. *Proximate Cause. Motor Vehicle,* Operation. *Evidence,* Presumptions and burden of proof, Inference.

At the trial together of actions of tort respectively against the owner and the driver of an automobile, there was evidence of the following facts: Before dark on an afternoon in May, a party of eight boys were riding in the automobile on the road between Amherst and Belchertown, the owner, the driver and a third boy occupying the front seat. The boys were "hilarious." At one time two of them had ridden on the top of the automobile. When passing through Amherst the owner and the driver had commented on their conduct and at their direction the others then had refrained from shouting and waving at other travellers. Such practices however were resumed after leaving Amherst, and one of the boys then rode on the right running board for at least a mile and from that position waved and shouted at persons whom the automobile passed. At that time the automobile was being driven on the extreme right of the road, almost on a gravel shoulder, although the macadam was eighteen feet wide, and there was no evidence of vehicular traffic in the immediate vicinity other than the defendant's automobile. Its rate of speed was forty miles per hour and no horn was sounded. The boy on the running board then reached out his right arm to wave at the plaintiff who was walking on that side of the road in the same direction as the automobile was going, and without intention his hand and arm came in contact with the plaintiff's face, inflicting injuries. *Held,* that

(1) A finding was warranted that the automobile at the time of and preceding the accident was being operated negligently;

(2) An inference was warranted that both defendants knew that the boy was on the running board;

(3) The questions, whether the driver should reasonably have anticipated that the boy on the running board in passing the plaintiff would act as he had acted in passing other travellers that afternoon, and, if so, whether in this particular instance the waving of his hand, not intending harm, was reasonably likely to cause injury because of the

close proximity to the pedestrian in which the driver's operation of the automobile had placed him, were questions of fact for the jury;

(4) A finding was warranted that negligence of the driver was a proximate cause of the plaintiff's injuries;

(5) The evidence warranted the inference by the jury that the owner had not abandoned the control which *prima facie* belonged to him;

(6) A finding was warranted that the defendant owner was liable for the negligent operation of the automobile;

(7) A verdict against each defendant was warranted.

FOUR ACTIONS OF TORT, the first and second against the owner, and the third and fourth against the driver of an automobile, the negligent operation of which was alleged to have caused personal injuries to the plaintiff in the first and third actions and consequential damages to his father, the plaintiff in the second and fourth actions. Writs dated August 14, 1929.

In the Superior Court, the actions were tried together before *Cox*, J., who, after verdicts for Chester Wheeler in the sum of $2,000, and for Perley Wheeler in the sum of $375, reported the actions for determination by this court.

The cases were submitted on briefs.

*J. H. Madden*, for the defendants.

*W. L. Stevens*, *J. A. G. André*, & *G. L. Burke*, for the plaintiffs.

DONAHUE, J. On the evening of May 30, 1929, a party of eight boys started from Easthampton in an automobile owned by the defendant Darmochwat and driven by the defendant Wenta. These two with a third boy occupied the front seat. When they started, the five others sat in the rear seat. According to the testimony of one of the party they were all "out for a good time" and were all "hilarious." Between Northampton and Amherst two of the company, one of whom was named Baldyga, rode for a time on top of the car. The members of the party were singing and waving their hands and shouting at practically every one they passed. While going through the town of Amherst they avoided the business section. The owner and driver there commented on the conduct of the passengers and at the direction of the owner or driver they there

refrained from shouting and waving at other travellers. These practices were resumed, however, after they had passed through the town, and were on the Belchertown road, where, about two miles from Amherst, there was an accident causing injury to the plaintiff Chester Wheeler. For at least a mile before reaching the point where the accident occurred, Baldyga rode on the right running board and from that position waved and shouted at persons the automobile passed. About a tenth of a mile from the scene of the accident there was a knoll which obstructed the driver's view of any pedestrians who might be on the right hand side of the road going in the same direction. It was still daylight. The plaintiff Chester Wheeler and three other boys were walking single file in the same direction in which the automobile was travelling, on the right hand side of the road and on the dirt shoulder. Although there was eighteen feet width of macadam and no evidence of vehicular traffic in the immediate vicinity other than the defendant's automobile, yet it was driven on the extreme right of the road almost on the gravel shoulder where Wheeler and his companions were walking, with no horn blown and at undiminished speed which, on the testimony, might be found to be as high as forty miles an hour. As the automobile neared the boys on the gravel shoulder Baldyga, who was still on the running board hanging on to the car with his left hand, reached out his right arm to wave at them and without intention his hand or arm came in contact with the face of Wheeler and injured him. The automobile went on without stopping. By a next friend Chester Wheeler brought suits against the owner and against the driver, and his father brought suits against the same defendants for medical and hospital expenses occasioned by his son's injury. The cases were tried together. No evidence was introduced by the defendants. The defendants' motions for directed verdicts were denied. After verdicts for the plaintiffs the cases came to this court on a report which included a stipulation that if the jury was warranted in finding for the plaintiffs judgments should be entered for the plaintiff Chester Wheeler against each defendant in the sum of

$2,000 with interest from February 18, 1931, the date of the verdict, and for the plaintiff Perley Wheeler against each defendant in the sum of $375 with interest from the same date, otherwise judgment for the defendants to be entered in each case.

There is nothing in the evidence to indicate, and no contention is made by the defendants, that Chester Wheeler was lacking in due care. The evidence warranted a finding by the jury that the automobile at the time of and precedent to the accident was being operated at a speed and in a manner which under the circumstances was negligent. The question presented for decision is whether there was evidence which warranted a finding that the injury of Chester Wheeler was the direct and proximate result of negligence for which the defendants were respectively responsible. The jury, in response to a question put by the trial judge when verdicts for the plaintiffs were returned, answered that it found that the two defendants knew that Baldyga was on the running board. On all the evidence it cannot be said that this was an unwarranted inference in view of the length of time that Baldyga was there and his conduct while in that position. With that knowledge and with knowledge of the hilarious and unbridled conduct of the members of the party, particularly of Baldyga, during the trip up to that point, the defendant Wenta, unnecessarily and without compulsion by reason of traffic, drove the automobile of the defendant Darmochwat at a very high rate of speed close to the boys walking on the gravel shoulder. Whether Baldyga, in passing the plaintiff Chester Wheeler and his companions, would act as he had acted in passing other travellers that evening, was something which the driver should reasonably have anticipated, and, if so, whether in this particular instance the waving of his hand by Baldyga, not intending harm, from the close proximity to the pedestrians in which the driver's operation of the automobile had placed him was reasonably likely to cause injury were questions of fact for the jury. If, as the evidence warranted, the jury found affirmative answers to those questions, the negligence of the driver might be

found to have been the proximate cause of Chester Wheeler's injury. *McDonald* v. *Snelling,* 14 Allen, 290, 295, 296. *Lane* v. *Atlantic Works,* 111 Mass. 136, 140. *Hill* v. *Winsor,* 118 Mass. 251, 259. *Burke* v. *Hodge,* 217 Mass. 182, 184. *Horan* v. *Watertown,* 217 Mass. 185, 186. *Pudlo* v. *Dubiel,* 273 Mass. 172, 175. *Milbury* v. *Turner Centre System,* 274 Mass. 358, 361.

The owner of the automobile, Darmochwat, had the same opportunity as the driver to observe street conditions, had the same knowledge as to the presence and conduct of Baldyga on the running board and as to the boisterous conduct of all the occupants of the automobile which characterized the ride up to the point of the accident. He as well as the driver had commented on that conduct and as a result it was temporarily abated while passing through the town of Amherst. It does not appear under what circumstances the driver first took the wheel. There is no evidence that there was a loan or other bailment of the automobile or that there had been any definition, contractual or otherwise, by the owner and the driver of their respective relations with regard to the right to control the manner in which and the places where it should be operated. The most that can be inferred from the evidence is that the owner permitted the driver to operate it. When it appears that an owner of an automobile is riding in it while it is being driven by another in an improper manner, and there is no evidence indicating a contractual surrender, nor evidence of an abandonment, of the owner's right to control it, the inference is warranted that the owner knew of and permitted its improper operation and thus became responsible for the consequences. In *Commonwealth* v. *Sherman,* 191 Mass. 439, where nothing appears as to the identity of the driver, it is said at page 441: "The question therefore comes down to this: Did the Commonwealth make out a *prima facie* case of participation by the defendant in the vehicle in question being run at an illegal speed, by showing that the vehicle was being run by the operator at an illegal speed while the defendant was in the tonneau (being either the general owner of the vehicle or having

such a special property in it as gave him the right to control it)? In our opinion those facts warranted the inference that the owner knew and allowed his vehicle to be illegally run. The case so made out is a *prima facie* case only. It may be contradicted or explained. But uncontradicted and unexplained it does, in our opinion, warrant that inference, and so makes out a *prima facie* case." The mere concurrent facts of ownership and of occupancy of an automobile do not predicate liability for its operation by another without the further fact that the owner retained the right and power to control the manner in which it was to be driven. Where "the owner of an equipage, whether a carriage and horses or a motor, is riding in it while it is being driven, and has thus not only the right to possession, but the actual possession of it, he necessarily retains the power and the right of controlling the manner in which it is to be driven, unless he has in some way contracted himself out of his right, or is shewn by conclusive evidence to have in some way abandoned his right. . . . The owner, indeed, has a duty to control the driver. If the driver is driving at a speed known to the owner to be dangerous, and the owner does not interfere to prevent him, the owner may become responsible criminally. . . . The duty to control postulates the existence of the right to control." *Samson* v. *Aitchison*, [1912] A. C. 844, 849. *Pratt* v. *Patrick*, [1924] 1 K. B. 488, 491. See *Fuller* v. *Metcalf*, 125 Maine, 77; *Beaudoin* v. *W. F. Mahaney, Inc.* 131 Maine, 118; *Bell* v. *Jacobs*, 261 Penn. St. 204.

There was no evidence here that there had been any contractual surrender by Darmochwat, the owner, to Wenta, the driver, of the right and power to control the operation of the automobile. We are of opinion that the evidence warranted the inference by the jury that the owner "had not abandoned the control which . . . *prima facie* belonged to him," *Samson* v. *Aitchison*, [1912] A. C. 844, 850 (*Commonwealth* v. *Sherman*, 191 Mass. 439, 441), and that on all the evidence the findings by the jury that the defendant Darmochwat was liable for the negligent operation of the automobile by Wenta, and that the injury to Chester

Wheeler was the proximate result of that negligence were not unwarranted.

Since the jury were warranted on the evidence in finding each defendant legally responsible for the injury to Chester Wheeler, in accordance with the stipulation of the parties judgment must be entered for him in his suit against each defendant in the sum of $2,000 with interest from February 18, 1931, and for the plaintiff Perley Wheeler in his suit against each defendant in the sum of $375 with interest from February 18, 1931.

*So ordered.*