NATHAN SALTMAN, petitioner.

COMMONWEALTH *vs.* NATHAN SALTMAN.

Suffolk. February 4, 1935. — February 25, 1935.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & QUA, JJ.

*Practice, Criminal,* Exceptions: allowance and establishment. *Motor Vehicle,* Operation. *Agency,* Principal's responsibility for crime.

A commissioner appointed to hear a petition to establish a bill of exceptions has no power to report an amendment of the bill even though the amendment be agreed to by both parties.

A verdict of guilty was warranted at the trial of a complaint for violation of G. L. (Ter. Ed.) c. 90, § 24, in that the defendant "did operate a certain motor vehicle and did go away without stopping and making known his name, residence and the number of his motor vehicle after knowingly colliding with" another motor vehicle, on evidence that, at a time when the defendant's automobile was being operated

by one employed by the defendant as a chauffeur and the defendant was riding on the seat beside the chauffeur, the automobile, to the knowledge of the defendant, collided with another motor vehicle; and that after the vehicles had been disengaged the defendant instructed his chauffeur to get into his automobile and then drove it away without making known his name, residence and the number of his automobile: a finding was warranted that the defendant was in control of the operation of his automobile at the time of the collision.

PETITION, filed in this court on November 13, 1934, to establish the truth of exceptions alleged to have been saved by the petitioner at the trial of the following complaint. Proceedings relating to the petition are described in the opinion.

COMPLAINT, received and sworn to in the Municipal Court of the Roxbury District of the City of Boston on July 13, 1934, and described in the opinion.

On appeal to the Superior Court, the complaint was tried before *Hayes*, J., a judge of a district court sitting in the Superior Court under statutory provisions. Material evidence is described in the opinion. The defendant was found guilty.

*H. F. R. Dolan*, for Saltman.

*J. A. Sullivan*, Assistant District Attorney, for the Commonwealth.

PIERCE, J. This is a petition filed in this court to establish the truth of exceptions, saved by the defendant at a trial to a jury in the Superior Court, upon a criminal complaint brought under G. L. (Ter. Ed.) c. 90, § 24. The complaint in substance alleges that the defendant, on July 2, 1934, at Boston, "with force and arms in Huntington Avenue, said avenue being then and there a public way in said city, did operate a certain motor vehicle and did go away without stopping and making known his name, residence and the number of his motor vehicle after knowingly colliding with the motor vehicle of James H. Fannon; against the peace of said Commonwealth and the form of the statute in said case made and provided." A commissioner was appointed to hear the parties and their evidence, settle the truth of the exceptions and report to the court.

The commissioner duly filed a report, in which he finds that the petitioner filed an amended bill of exceptions that appears in the record as Exhibit B. It is agreed that said bill of exceptions is accurate in all respects and was approved by the trial judge except for the following statement: "No other part of the charge qualified or modified that part of said charge hereinabove quoted." The commissioner found that the trial judge disallowed the amended exceptions solely because the petitioner refused to delete that statement. He found that the statement was true. It was suggested, and counsel for the Commonwealth and the petitioner agree, that the sentence in Exhibit B which reads, "The defendant Saltman duly and seasonably excepted to that part of said charge hereinabove quoted," should further read, "and excepted to no other part of the charge." This added statement the commissioner found "to be true." The agreement of the parties that there should be added by the commissioner the words, "and excepted to no other part of the charge," did not and could not confer on the commissioner power to report an amendment of the exceptions. The petition is granted. The bill of exceptions as disallowed is established. *John B. Frey Co. Inc.* v. *S. Silk, Inc.* 245 Mass. 534, 538. *Freedman, petitioner,* 222 Mass. 179, 181.

At the conclusion of the evidence and before arguments the defendant filed a motion in writing requesting the judge to direct the jury to return a verdict of not guilty. The judge denied this motion, and to its denial the defendant duly excepted.

The bill of exceptions contains all the material evidence offered by the Commonwealth and the defendant. In substance this evidence is as follows: On July 2, 1934, at 7:45 A.M. one James H. Fannon was driving an automobile on Massachusetts Avenue, near the junction of Huntington Avenue, in Boston, going toward Cambridge. He testified, in substance, that he was stopped because of a red light against him; that he was in the left line of three lines of motor vehicles, all waiting for the light to change to green; that there were automobiles ahead of him but he did not

know whether or not any were behind him; that while he was in this position an automobile came from behind and struck his automobile in the rear, jarring it; that he put on his emergency brake and shut off his motor, got out of his automobile and went to the rear, where he found that the right side of the front bumper of the other automobile had interlocked with the left side of the rear bumper of his automobile for a distance of perhaps a foot or more; that the chauffeur who was driving the other automobile, whose name he afterwards knew to be Gulliver, stepped out of it and came up to him; that they both stood and jumped on one of the bumpers and lifted on the other in an effort to disengage or free them; that after they had been jumping and lifting on the bumpers in this manner for perhaps two minutes the defendant, who was sitting beside the driver's seat in the other automobile, slipped into the driver's seat and backed the automobile two or three feet, thus freeing the bumpers but stripping the threads of two bolts which held the left side of the rear bumper of Fannon's automobile, causing one of the bolts to drop to the ground and the left side of the bumper to sag; that Gulliver picked up the bolt and attempted to straighten the bumper by inserting the bolt in its place, but that it did not hold; that the defendant brought the automobile in which he was sitting up alongside where Fannon and Gulliver were, and told Gulliver to get in; that Gulliver stepped into the automobile and the defendant drove away; that while Fannon and Gulliver were working on the bumpers there was no talk except "Lift here" or "Jump there"; that when Gulliver stepped into the automobile upon the defendant's calling to him, Fannon hollered, "Wait a minute. I want your name and registration"; and that the defendant replied, "Learn to drive. Go to . . . ." Fannon also testified that the gasoline tank and left rear mudguard as well as the bumper were damaged in the amount of about $30, that the defendant did not get out of his automobile and that Fannon "knew nothing about the Packard car behind him until he felt the jar of his car."

The defendant testified that Gulliver was in his employ

as a chauffeur and had driven his automobile that morning from Hull toward Cambridge; that as they approached Huntington Avenue on Massachusetts Avenue they stopped in traffic because of a red traffic light; that there were many motor vehicles stopped there, his automobile being in the left of three lines, partly on the street car rails, behind another automobile; that many automobiles came up behind them; that after they had been stopped there about a minute he felt his automobile drag for just a moment and heard a click; that from Hull to the place where they stopped on Massachusetts Avenue he had been reading his newspaper and was reading it at the time he felt the drag and heard the click; that Gulliver got out and he folded up his newspaper but held it in his hand; that he saw Gulliver walk up to the front of the automobile and speak to Fannon there and saw him jumping up and down in the front of his automobile; that he got out of his automobile on the right side of it and walked to the front, where he saw Gulliver and Fannon jumping on one of the bumpers and lifting on the other, thereby releasing the two bumpers but causing a bolt from the rear bumper of Fannon's automobile to fall to the ground; that he pointed out the bolt to Gulliver and Fannon and said that the nut might be around somewhere, and hunted for it but could not find it; that the rear bumper of Fannon's automobile sagged toward the ground when the bumpers were released, but that when Gulliver put the bolt back in its place the bumper was in place and held; that he then returned to his own automobile and got into the driver's seat, backed it a few feet and drove it to the left alongside where Gulliver and Fannon were standing; that he told Gulliver to get in, which Gulliver did; that he then drove away; that he did not hear Fannon holler "Wait" or anything else; that he did not know that any damage had been done to Fannon's automobile; that the other automobiles waiting behind were honking their horns and making a disturbance; and that it never occurred to him that there was any occasion for him to tender his name, residence or the number of his motor vehicle to any one and he did not do so.

Gulliver testified that he was employed as a chauffeur by the defendant; that on the morning of this accident he was driving the defendant's automobile from Hull to Cambridge; that the defendant was sitting beside him reading a newspaper most of the way; that they stopped on Massachusetts Avenue at the intersection of Huntington Avenue because of a red traffic light; that they had waited there a minute or more when he released his brake and was a little careless in doing so, which resulted in the automobile rolling forward a foot or so because the street inclined toward Huntington Avenue, thereby causing the right side of the front bumper of the automobile to interlock with the left side of the rear bumper of the automobile in front of him for a distance of a few inches, damaging the rear of that automobile; that he alighted and went up front to help Fannon release the bumpers by jumping up and down on one of the bumpers and lifting on the other; that they did this for about two minutes; that the defendant got into the driver's seat, backed his automobile and pulled the bumper of the other automobile, and it fell off; that Gulliver picked up the bolt and put it in its place, thereby making the rear bumper level; that the defendant then got into the driver's seat of his automobile and drove it alongside where Gulliver and Fannon were; that Gulliver got into the automobile and the defendant drove away; that he heard Fannon holler, "Wait, I want to get your name and number," but thought he was addressing the defendant; and that the defendant replied, "Learn to drive. Go to . . . ." Gulliver further testified that while he and Fannon were trying to release the bumpers there was no talk between them except about the work they were doing; that the defendant got out of his automobile and came to the front of it while Gulliver and Fannon were attempting to force the bumpers; that he did not think there was any damage done; and that neither he nor the defendant gave his name, residence or the number of the motor vehicle to any one.

At the conclusion of the evidence the judge charged the jury in part as follows: "If you find that Gulliver was

operating the automobile in which Saltman and Gulliver were riding and Gulliver was operating said auto under the direction and control of Saltman and the auto collided with and did damage to the automobile of another and Saltman knew that the automobile in which he and Gulliver were riding had so collided with and had done damage, and Saltman directed Gulliver to go away and took Gulliver away without Gulliver giving his name, residence and the number of his motor vehicle, then . . . Saltman . . . [is] guilty. If no collision occurred and no damage resulted then . . . [Saltman] is [not] guilty. If Gulliver was operating the automobile in which Gulliver and Saltman were riding and it collided with the automobile of another and the two automobiles became locked together and then Saltman operated the automobile which had been previously operated by Gulliver and thereby did damage to the car of another by pulling off the bumper of such other car and knew he had so done and went away without giving his name, residence and the number of his motor vehicle, then Saltman is guilty." No other part of the charge qualified or modified that part of said charge hereinabove quoted. The defendant duly and seasonably excepted to the quoted part of the charge. The jury returned a verdict of guilty, and the defendant was sentenced to pay a fine.

G. L. (Ter. Ed.) c. 90, § 24, reads in part as follows: "Whoever upon any way, or in any place to which the public has a right of access, operates a motor vehicle recklessly . . . or whoever without stopping and making known his name, residence and the number of his motor vehicle goes away after knowingly colliding with or otherwise causing injury to any other vehicle or property . . . shall be punished by a fine of not less than twenty nor more than two hundred dollars or by imprisonment for not less than two weeks nor more than two years, or both." In the case at bar the complaint charges that the defendant "did operate a certain motor vehicle and did go away without stopping and making known his name, residence and the number of his motor vehicle after knowingly colliding with the motor vehicle of James H. Fannon." The defendant

"concedes that there was evidence upon which the jury might find that he went away without stopping and making known his name, residence and the number of his motor vehicle after knowingly causing injury to another vehicle," but contends that a verdict of not guilty should have been directed and that his exception to the charge should be sustained for the reason that he was not actually or constructively (as he alleges) operating his automobile when it collided with the automobile of Fannon. It is settled by *Wheeler* v. *Darmochwat*, 280 Mass. 553, 558, that "The mere concurrent facts of ownership and of occupancy of an automobile do not predicate liability for its operation by another without the further fact that the owner retained the right and power to control the manner in which it was to be driven." In the case at bar, on the defendant's evidence it could have been found that the defendant retained control of the operation of his automobile notwithstanding the fact that his chauffeur was the medium through which that control was exercised. The defendant, as owner seated beside the chauffeur, had the duty to control him and to prevent, so far as he was able, any conduct of the chauffeur in violation of the criminal law. *Commonwealth* v. *Sherman*, 191 Mass. 439. *Samson* v. *Aitchison*, [1912] A. C. 844, 849. *Guy* v. *Union Street Railway*, *ante*, 225. We find no error in the refusal to direct a verdict of not guilty or in the charge of the judge.

*Exceptions overruled.*