H. B. AGSTEN *v.* LUIGI LEMMA *et al.*

(No. 8586)

Submitted September 22, 1937. Decided October 26, 1937.

*Ben Moore, Kay, Casto & Amos* and *Stanley Dadisman,* for plaintiff in error.

*Steptoe & Johnson, Stanley C. Morris, W. E. Miller* and *W. F. Wunschel,* for defendants in error.

FOX, JUDGE:

In an action at law, in the Court of Common Pleas of Kanawha County, the plaintiff recovered a judgment

against Luigi Lemma, Cecil Lemma and Curtis Brewer, which upon writ of error to the Circuit Court of said county was affirmed. To this action of the Circuit Court, Luigi Lemma and Cecil Lemma prosecute this writ of error.

The plaintiff instituted his action against Luigi Lemma, Cecil Lemma, Curtis Brewer, William (Billy) Wentz, Tom Waldorf, Aubrey Dean and Nitro Ice Company, a corporation. At the conclusion of the testimony separate motions were made by the defendants for a directed verdict in their favor. This motion was sustained as to William (Billy) Wentz, Aubrey Dean, Tom Waldorf and Nitro Ice Company, and was overruled as to the other defendants. The case therefore went to the jury against Luigi Lemma, Cecil Lemma and Curtis Brewer.

The action grew out of damages sustained by the plaintiff when a brick, thrown or otherwise propelled from a truck operated by Cecil Lemma, the son of Luigi Lemma, struck and passed through the windshield of the automobile operated by the plaintiff, striking him in the face, and causing him to lose control of his car; the result being that his car was damaged and severe injuries were sustained by him in his person. The truck and automobile involved were being operated, at the time of the accident, on a public highway in said county.

The facts, as developed by the evidence are: Luigi Lemma borrowed from the Nitro Ice Company a one and one-half ton Ford truck for the purpose of transporting cement slabs and broken bricks from Nitro to his farm a few miles from that point. He employed two colored boys, George Waddy and Lewis Waddy, to operate the truck. Some time during the day of the accident, without the knowledge of Luigi Lemma, his son, Cecil Lemma, aged about eighteen years, associated himself with the enterprise. In the afternoon, on the third trip to the farm, Cecil Lemma was driving the truck, and the two colored boys were sitting with him in the cab seat in the front part of the truck. On their way, at a point near a field across Armour Creek, they fell in with Curtis Brewer, Billy Wentz, Aubrey Dean and Tom Waldorf, school mates of Cecil Lemma, who were invited by Lemma to

accompany him on his trip to the farm. These boys placed themselves on the body of the truck to the rear of the cab. The truck had been stopped at this point to enable Lemma to straighten up some cement slabs which were becoming displaced, and there is evidence that at this time one or more bricks were thrown by one or more of the invitees from the truck into a pond created by high water. Shortly after this, when the truck was climbing a hill, running in low gear and at a slow speed, Cecil Lemma stepped on the running board of the truck and looked back and saw, or could have seen, the rear portion of the truck and the four boys. After the truck reached the top of the hill and started down the other side, and when near the place of the accident, two of the boys on the rear of the truck kicked or threw a brick from the truck onto the highway. Tom Waldorf says he kicked one brick onto the road, and that the boys watched it until it stopped rolling; that Curtis Brewer then said "I can do that, too", and threw a brick. Brewer admits he threw a brick. Both of these acts occurred closely together and near the 40th street intersection with the Tyler Mountain road. Cecil Lemma and the two colored boys in the cab all say they knew nothing of these bricks being kicked or thrown from the truck, and after the brick struck the plaintiff's car, ran the truck some three or four hundred yards before the boys in the rear of the truck could communicate to them that an accident had occurred. Upon hearing of the accident, Lemma turned the truck and returned to the scene.

At the time the brick was thrown from the truck the plaintiff was driving his automobile in the opposite direction from that of the truck. His car was passing the truck at that particular time. The brick which Brewer threw did not strike the road, but apparently did strike the windshield of plaintiff's car and passed through the same, striking him. A brick was found in the car after the accident. The evidence and the circumstances force the conclusion that the brick which caused the accident to the plaintiff was thrown by Curtis Brewer, and we interpret the jury's finding as establishing that fact.

Other circumstances not directly connected with the

accident, but following shortly thereafter, should be noted. When Cecil Lemma and Curtis Brewer found the brick in plaintiff's car they removed the same and Lemma stamped it in the mud at the side of the road. Afterwards, the brick was found and identified, and when asked to explain his apparent effort to conceal it, Lemma said he was "Just nervous and scared. It was the first thing that popped into my mind", and, referring to the same brick, "Well, when I saw it I had a good idea where it came from". It appears, however, that when Lemma and Brewer were asked about this brick they freely disclosed what had been done and returned to the scene of the accident with a member of the State Police, and located and identified the brick. It appears, also, that when the four boys who were on the rear of the truck were questioned by the State Police the night of the accident they were evasive and non-committal, particularly Brewer. His explanation of his conduct was "Well, I was afraid of what they would do to me for throwing the brick."

The declaration charges that the truck was improperly loaded. There is some conflict as to the manner of loading and as to whether or not there were side boards. Taking the evidence as a whole, it fails to establish that the manner in which the truck was loaded contributed in any way to the accident; it likewise fails to establish that the brick which struck plaintiff's car was propelled in any manner other than that used by Curtis Brewer.

On this evidence the jury returned a verdict for the plaintiff against the Lemmas and Curtis Brewer. In doing so, it necessarily found that the brick which caused the accident was thrown by Curtis Brewer, and if it was thrown by him, all other claims and conjectures in connection therewith are necessarily eliminated. There is nothing in the evidence even remotely connecting Brewer with the accident except his admitted act of throwing the brick; therefore, the conclusion that the jury found against Brewer for the reason it believed he threw the brick which caused the accident is inescapable. So finding, the jury must have further found that the evidence warranted a verdict against the Lemmas by reason of

their connection with the act of Brewer which was the direct cause of the accident.

The evidence fails to show that either of the three persons responsible for the operation of the truck, Cecil Lemma and the two Waddys, had direct knowledge of the act of Brewer in throwing the particular brick which caused the accident, or the throwing of any bricks while the truck was being operated on the highway. There is the direct and positive evidence of the three who sat in the cab seat of the truck that they knew nothing of the actions of the boys in the rear end of the truck. These statements are not contradicted either by evidences or the circumstances. In fact, none of them knew there had been an accident until the truck had traveled three or four hundred yards beyond the scene of the accident, and the fact that the truck was turned and the driver and others returned to the wrecked automobile negatives the idea that they did know and were seeking to run away.

But should they have known? What was the duty and obligation of those in charge of the truck with respect to the conduct of their invitees and guests? In applying old principles to modern developments, we are sometimes justified in resorting to cases not clearly analogous. The liability of an innkeeper for acts of his guests involving injury to a third person may not be analogous to the case before us, but his liability may be greater in that he entertains his guests for hire, whereas no such situation here exists. With respect to the liability of an innkeeper we find the law clearly stated:

> "The innkeeper is not liable to a stranger for personal injury resulting from the act of a guest where neither he nor his agents knew, or by the exercise of reasonable care could have known, that the manner and behavior of the guest were such as to indicate to a man of average prudence that the guest might commit acts which would naturally result in injury to others."

32 C. J. 562, section 69.

"As to the liability of an innkeeper to third persons for the act of a guest, though there are few decisions directly on the point, the generally accepted view is apparently to the effect that he can be held liable only where he knew or by the exercise of ordinary care could have known that the guest was likely to do some act resulting in injury to a third person."

14. R. C. L. 538, section 36.

In this case the invitation to the four boys to ride in the truck did not charge the operator thereof with liability for all misconduct of which they might become guilty while riding thereon; he was only charged with such conduct on their part as might reasonably be anticipated by him. An act of negligence on the part of an invitee for which the invitor may be held liable must be such as the invitor could "have anticipated as reasonably likely to happen." *Horan* v. *Town of Watertown*, 217 Mass. 185, 104 N. E. 464. In *Kennedy* v *Hedberg*, 159 Minn. 76, 198 N. W. 302, the owner of an automobile, Hedberg, left the same on a public street with the motor running, leaving Day in the car, who, in the absence of the owner undertook to change its position, resulting in damage to a third party. The statute involved prohibited the leaving of a car on a public street, unattended, with the motor running. The owner was held not liable. The court said: "Hedberg could not anticipate that in his momentary absence Day would act as he did." In *Wheeler* v. *Darmochwat*, 280 Mass. 553, 183 N. E. 55, 56, the owner and operator of a car was held liable for damages to a pedestrian caused by the act of an invitee who was standing on the running board of the car, waving his hands, and such conduct along with other riotous conduct of his companions had continued for some time under circumstances where the owner either knew or should have known of such conduct. As we read the case the judgment was upheld on the jury's finding that the defendants knew that the negligent guest was on the running board, and the inference that defendants knew of the misconduct of the particular invitee and four

others. This case is a close parallel to the case at bar, and if the evidence herein supported the contention that either Cecil Lemma, George Waddy or Lewis Waddy knew or should have known of the misconduct of Curtis Brewer and his companions, it would clearly uphold the verdict and judgment herein.

This brings us to the crucial question. Can we say that the Lemmas are charged with knowledge of the conduct of Brewer and his companions, or with that of Brewer alone? We think not. It may be that Cecil Lemma saw bricks thrown into the pond at Armour Creek; he looked back and observed his guests as the truck ascended the grade a half a mile from the place of the accident; there is nothing in the record to show that there was then any misconduct; after that time, according to the testimony of Lemma and the Waddys, none of them knew of the actions of any of the boys on the rear of the truck. The side glass or rear-view mirror was trained on the road, and Lemma says he could not see the back end of the truck; there was a window in the rear of the cab but the failure to use this view can be explained by the duty of the driver to keep watch on the road ahead in the safe operation of the truck; it is uncontradicted that to notify the three persons in the cab seat of the truck, those in the rear knocked on the rear of the cab and that they did not succeed in attracting their attention until the truck had been driven some considerable distance from the place of the accident. Furthermore, the two bricks kicked or thrown from the truck by Waldorf and Brewer were so propelled at practically the same time, one act following closely upon the other. It may be that the brick which witness Fowler saw come off the truck was not the same brick which Waldorf says he kicked, but it came off the truck at or near the same place. There is no testimony that after leaving Armour Creek, any bricks were either thrown or kicked or rolled from the truck at any place other than at and very near the scene of the accident, so that nothing is shown to support the theory that the Lemma defendants knew of the conduct of these boys at a time when any protest they might have made would have been

availing to prevent the accident. The whole theory of the plaintiff's case, so far as it depends on the assumption that Brewer threw the brick, must necessarily rest on knowledge, or the duty to know, on the part of someone connected with the operation of the truck, and failure to act thereon. The case of *Fletcher* v. *Baltimore & Potomac Rr. Co.*, 168 U. S. 135, 18 S. Ct. 35, 42 L. Ed. 411, cited by appellee, was based upon imputed knowledge. The evidence in this case, in contrast with that produced in *Wheeler* v. *Darmochwat, supra,* fails to establish a situation calling for any action on the part of those operating the truck prior to the accident. The conduct of Cecil Lemma and Brewer with respect to the brick found in plaintiff's car is not approved, nor are the evasive answers of Brewer when first questioned, and both may well have had some influence on the jury's verdict. However, we do not think the shadow cast on the testimony of these witnesses by these mistakes sufficient to overcome the effect which should be given to all the testimony in the case.

In view of the course this case must take, it is unnecessary to pass on the alleged lack of evidence to support the medical and hospital bills paid by the plaintiff. Our cases require proof of the reasonableness of bills of this character where the matter is put in issue, and, in general, we hold to those rulings.

Nor is it necessary to pass on the alleged error as to the refusal of the court to propound the interrogatory as to whether or not Brewer threw the brick which caused the accident. We construe the verdict of the jury as answering the same in the affirmative. We think the interrogatory if timely submitted should have been propounded. *Proudfoot* v. *Transportation Co.*, 100 W. Va. 733, 132 S. E. 746, says interrogatories should be submitted before argument.

The judgment of the Circuit Court, so far as it affects the plaintiffs in error, Luigi Lemma and Cecil Lemma, is reversed, the verdict of the jury set aside and the case remanded for a new trial.

*Reversed; verdict set aside; new trial awarded.*