COMMONWEALTH *vs.* CHRISTOPHER P. JOYCE.

Essex.    October 3, 1950. — February 6, 1951.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Motor Vehicle*, Disclosure of operator's identity.  *Constitutional Law*,
Self incrimination.  *Words*, "Might."

Conviction of an operator of a motor vehicle upon a charge of violating
G. L. (Ter. Ed.) c. 90, § 24, as amended, by going away without making
known his name, residence, and the registration number of his auto-
mobile after knowingly colliding with and injuring a person was justi-
fied by evidence warranting a finding that, after such a collision, the
operator failed to give the required information to anyone in behalf
of the victim or to any police officer because the operator believed
that one or more police officers present at the scene of the accident
had that information.

The provisions of G. L. (Ter. Ed.) c. 90, § 24, as amended, penalizing an
operator of a motor vehicle for going away without stopping and making
known his name, residence, and the registration number of his vehicle
after knowingly colliding with or otherwise injuring a person do not
violate the provision of art. 12 of the Declaration of Rights of the
Massachusetts Constitution against self incrimination.

INDICTMENT, found and returned on May 10, 1950.

The indictment was tried in the Superior Court before
*O'Brien*, J.

*T. A. Brett*, for the defendant.

*H. R. Mayo, Jr.*, Assistant District Attorney, for the
Commonwealth.

WILLIAMS, J.  The defendant has been found guilty by a
jury and sentenced on an indictment which charges that he
did go away after knowingly colliding with and causing in-
jury to a person without stopping and making known his
name, residence, and the number of his motor vehicle.  See
G. L. (Ter. Ed.) c. 90, § 24, as amended.  There was evi-
dence for the Commonwealth that on January 10, 1950, at
about 12:30 A.M. on Hanover Street in Lynn the automobile
of the defendant "ran over" the body of a person lying near

the center of the street. The automobile "stopped some distance down the street . . . [and] the defendant got out of the driver's side." He and a companion came back to the body. A group of people from another automobile were standing near by, and the defendant said in their hearing, "I am Christopher Joyce . . . My God, what am I going to do; I am Councillor Joyce." He requested one of the group not to tell the police that his (Joyce's) automobile ran over the body, and to get the other people to say that when they first saw his automobile it was parked on Chase Street. After the automobile passed over the body, blood was seen by members of this group of people around the body where it had not been seen before. Police officers arrived on the scene within a short time and in putting the body into the police ambulance one of the officers "detected breathing and pulse." The officers knew the defendant by name and that he was a city councillor from ward six, and two of them had a general idea as to where he lived. He testified that "no question was raised at the scene by the police as to his identity or his residence; that there was never any question in his mind but that he was fully identified to the police; that his automobile was parked near to where he had been talking to the police officers"; and "that his automobile was fully observed by them." There was no evidence that the defendant, either orally or in writing, made known his residence or the register number of his automobile to anyone on behalf of the victim or to any police officer. The defendant excepted to the denial by the trial judge of a motion for a directed verdict of not guilty and subsequent motions for a new trial and a setting aside of the verdict. The exceptions to the denial of these latter motions have not been argued and are treated as waived.

. There was no error in submitting the case to the jury. There was evidence for their consideration that the defendant was the operator of an automobile which collided with the person lying in the street, that injury was caused to that person, and that the defendant was aware of the collision. It could have been found that he failed to give the informa-

tion required by the statute because he believed that one or more of the police officers knew his name, his residence and the register number of his automobile.   Such belief does not excuse his failure to give this information.   See *Commonwealth* v. *Horsfall*, 213 Mass. 232.   *Commonwealth* v. *Nurmi*, 250 Mass. 128.   *Commonwealth* v. *Lewis*, 286 Mass. 256.

The defendant, however, contends that the statute under which he was convicted violates the provision of the Massachusetts Constitution against self incrimination.   Article 12 of the Declaration of Rights of the Constitution provides in part that "No subject shall . . . be compelled to accuse, or furnish evidence against himself."

This point has not been raised in any of the cases in which we have had occasion to consider that part of the statute, G. L. (Ter. Ed.) c. 90, § 24, which describes the offence in question.   See *Commonwealth* v. *Horsfall*, 213 Mass. 232; *Commonwealth* v. *Massad*, 242 Mass. 532; *Commonwealth* v. *Nurmi*, 250 Mass. 128; *Commonwealth* v. *Bleakney*, 278 Mass. 198; *Commonwealth* v. *Lewis*, 286 Mass. 256; *Saltman, petitioner*, 289 Mass. 554; *Commonwealth* v. *McMenimon*, 295 Mass. 467.   In *Commonwealth* v. *Prince*, 313 Mass. 223, 231–232, where the question is suggested, it is noted that in other jurisdictions similar statutes have been held not to require self incrimination, citing *Ex parte Kneedler*, 243 Mo. 632, *State* v. *Sterrin*, 78 N. H. 220, and *People* v. *Rosenheimer*, 209 N. Y. 115.   Other cases to the same effect are *People* v. *Diller*, 24 Cal. App. 799 (1914), *Woods* v. *State*, 15 Ala. App. 251 (1916), *People* v. *Padilla*, 36 Porto Rico, 710 (1927), *State* v. *Razey*, 129 Kans. 328 (1929), *McDonald* v. *State*, 54 Okla. Crim. 122 (1932), and *Ule* v. *State*, 208 Ind. 255 (1935).   We have found no case in which a contrary result is reached.

The purpose of the statute is to enable one injured by the operation of an automobile upon a public way or a way to which the public has access to obtain forthwith accurate information as to the person in charge of the automobile. *Commonwealth* v. *Horsfall*, 213 Mass. 232, 236.   It is a

statute enacted by the Legislature within the exercise of the police power and is designed to promote the safety of the public. As said in *Pawloski* v. *Hess,* 250 Mass. 22, 25, "It is . . . matter of common knowledge that many lives are lost and large numbers of persons injured through the operation of motor vehicles on highways. Any rational legislation calculated to diminish this appalling impairment of human usefulness and happiness is within the province of the legislative department of government." A statute, although based on strong considerations of public policy, cannot stand against the provisions of the Constitution, but as stated in *Commonwealth* v. *Prince,* 313 Mass. 223, 228, referring to the constitutional guaranties of freedom of the press and of religion, "it does not follow that the channels through which these freedoms are exercised may not be affected and regulated in some degree by enactments under the constitutional powers of government designed to promote the public health, safety or welfare." The facts which an operator of an automobile is required to divulge are matters of personal identification and the identification of his automobile. Certainly none of these facts in the circumstances of the present case tends to incriminate him. Wigmore, Evidence (3d ed.) § 2259d, page 352. By making known these facts he does impliedly state that he knowingly collided with a person on the highway. But there is nothing criminal in the fact of a collision. The only argument as to incrimination which we perceive is that, in connection with other facts pertaining to the operation of the automobile before the collision, the fact of the collision may be an element necessary to be established in connection with a charge of an offence involving physical contact, such as manslaughter. This contemplates a remote possibility. It is conceivable that almost any fact which is required to be stated by any of our recording statutes might become an element to be proved in support of some criminal charge. See G. L. (Ter. Ed.) c. 140, § 29 (true name law); c. 140, § 63 (record of purchases and sales by used automobile dealers); c. 140, § 79 (record of pledges by pawnbrokers); c. 140, § 123

(record of sales of firearms); c. 112, § 12A, as amended (reports of physicians treating bullet wounds); c. 112, § 31 (pharmacists' labels on medicinal compounds). In our opinion, however, the rule against self incrimination does not extend to cover such mere possibility. It is true that in *Emery's Case*, 107 Mass. 172, 181, it is said, "The principle applies equally to any compulsory disclosure of his guilt by the offender himself, whether sought directly as the object of the inquiry, or indirectly and incidentally for the purpose of establishing facts involved in an issue between other parties. If the disclosure thus made would be capable of being used against himself as a confession of crime, or an admission of facts tending to prove the commission of an offence by himself, in any prosecution then pending, or that *might* be brought against him therefor, such disclosure would be an accusation of himself, within the meaning of the constitutional provision" (emphasis supplied). We think that the word "might" as so used refers to a reasonable possibility. See *Liska* v. *Chicago Railways*, 318 Ill. 570; *Scott* v. *Shine*, (Texas Civ. App.) 194 S. W. 964, 969; *Davis* v. *Concord & Montreal Railroad*, 68 N. H. 247. In *Mason* v. *United States*, 244 U. S. 362, 365, it was said, "The constitutional protection against self-incrimination 'is confined to real danger and does not extend to remote possibilities out of the ordinary course of law.' . . . 'To entitle a party called as a witness to the privilege of silence, the Court must see, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer.'" In Wharton, Criminal Evidence (11th ed.) § 1136, it is said, "The witness cannot assert his privilege by reason of some fanciful excuse, for protection against an imaginary danger . . . in any view the danger to be apprehended must be real, with reference to the probable operation of law in the ordinary course of things, and not merely speculative, having reference to some remote and unlikely contingency." See *Blau* v. *United States*, 340 U. S. 159; *Ex parte Irvine*, 74 Fed.

954, 960; *O'Connell* v. *United States,* 40 Fed. (2d) 201, 204; *Camarota* v. *United States,* 111 Fed. (2d) 243, 245; *Schoeps* v. *Carmichael,* 177 Fed. (2d) 391, 400; *Estes* v. *Potter,* 183 Fed. (2d) 865; *United States* v. *Lumber Products Association, Inc.* 42 Fed. Sup. 910, 916; *United States* v. *Thomas,* 49 Fed. Sup. 547, 550; *People* v. *Boyle,* 312 Ill. 586, 596; *State* v. *Wood,* 99 Vt. 490; Jones, Commentaries on Evidence (2d ed.) § 2476; Underhill, Criminal Evidence (3d ed.) § 389. If there is no reasonable ground for supposing that the witness will incriminate himself he ought to answer. *Lothrop* v. *Roberts,* 16 Colo. 250. *Forbes* v. *Willard,* 54 Barb. S. C. 520. *Commonwealth* v. *Bolger,* 229 Pa. 597. *Ex parte Muncy,* 72. Tex. Crim. App. 541. The long established practice of permitting interrogation of the adverse party both by written interrogatories and by oral examination on the witness stand in so called accident cases while not determinative of the present issue has persuasive force. If the defendant cannot be required to furnish the information provided for by the statute, it would follow that, in the trial of a civil case arising out of the collision, on claim of privilege he could not be required to testify to facts having a tendency to show that he was the operator of the automobile involved.

The cases in other jurisdictions to which reference herein has been made appear to have been decided mainly on the ground that acceptance of the privilege to operate an automobile on the highway constituted a waiver of the constitutional right against compulsory self incrimination. We prefer to rest our decision on the ground that the tendency of the required information to incriminate the defendant is too remote to form the basis for a claim of privilege. The present case is not one where a charge of criminality in relation to the accident itself has been made against the defendant or where any investigation as to any criminality on his part is being pursued. There is no real or substantial danger that the evidence supplied will lead to a charge of crime or to the securing of evidence to support such a charge. See *Commonwealth* v. *Prince,* 313 Mass. 223, 231.

There is nothing in the history of the common law rule,

which is restated substantially in the Constitution of this Commonwealth, to indicate that the rule was intended to cover a situation such as the one we are now considering. See Wigmore, Evidence (3d ed.) §§ 2251, 2259d; *Opinion of the Justices,* 300 Mass. 620, 626 (minority opinion by Lummus, J.); Morgan, Privilege against Self-incrimination, 34 Minn. L. Rev. 1, 36–38.

*Exceptions overruled.*